## DAYTON v. FREE et al.

No. 2648.    Decided Dec. 1, 1914.    Rehearing denied May 8, 1915
(148 Pac. 408).

1. EXCEPTIONS, BILL OF—EXTENSION OF TIME FOR SETTLING—NECES-
SITY OF SHOWING EXTENSION IN BILL. Under Comp. Laws 1907,
Section 3197, as amended by Laws 1911, c. 94, specifying the
papers constituting the judgment roll, and not including orders
extending the time to serve and settle a bill of exceptions, such
orders must be incorporated and settled in the bill of exceptions,
or the bill will be disregarded as not served or settled in time,
as the court is authorized to notice only that which is part of
the judgment roll or properly settled in the bill of exceptions,
which, when filed, becomes a part of the judgment roll. (Page
280.)

2. APPEAL AND ERROR—WAIVER OF ERRORS BY FAILURE TO URGE. An
assignment, complaining of the overruling of the demurrer
to the complaint, was abandoned by appellants, where it was
not argued nor referred to either in the briefs or on the oral
argument. (Page 281.)

3. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—ERRORS REVIEW-
ABLE WITHOUT AN ASSIGNMENT. Being jurisdictional, the court
may notice the complaint to ascertain its sufficency to support
the judgment, though the assignment complaining of the over-
ruling of a demurrer thereto has been abandoned. (Page 281.)

4. MASTER AND SERVANT—LIABILITY FOR INJURIES—NEGLIGENCE OF
"INDEPENDENT CONTRACTORS." Plaintiff's employers contracted
with a mining company to construct a tunnel in accordance
with certain specifications, the company reserving the right
to terminate the contract. The contractors agreed to employ
no person on the work not satisfactory to the company or its
agent, to furnish the company a full list of all employees, and
to promptly discharge any employee at the request of the com-
pany for reasonable and sufficient cause. The specifications made
provision for laying a track, air, and ventilating pipes and
timbering the tunnel, the timbers, track and pipes to be placed
as designated by the company's engineer. The company was
to furnish an electrical apparatus for the work and a boarding
house and office buildings. It reserved the right to carry on
mining operations through the tunnel, not interfering with

¹Callahan v. Salt Lake City, 41 Utah 300, 125 Pac. 863.

the work by the contractors, and to order additional work to be done, or to make changes. The contractors were to promptly pay sub-contractors, material men and employees, and upon their failure so to do the company was given the right to retain a sufficient amount to pay them from payments due the con- tractors. Imperfect or insufficient work or material, when point ed out by the company's engineer, was to be immediately rem- edied and made good and sufficient by the contractors. *Held,* that the company having neither reserved nor exercised the right to superintend, direct or control the work with reference to the methods of procedure or means by which the result of the work was to be accomplished, plaintiff's employers were in- dependent contractors for whose negligence the company was not liable.[1]   (Page 281.)

5.  MASTER AND SERVANT—LIABILITY FOR INJURIES—NEGLIGENCE OF INDEPENDENT CONTRACTORS. Where independent contractors were employed by a mining company to construct a tunnel, the com- pany was not liable to an employee of the contractors injured by the discharge of a "missed hole" due to the negligence of the contractors in failing to notify or warn him or to pro- mulgate rules to prevent such an injury, as the employer of an independent contracor is only liable where the injury is the direct result of the stipulated work, where the work is in- trinsically dangerous and the injury is a consequence of the failure of the contractor to take appropriate precautions, or where the injury is caused by the non-performance of an abso- lute duty owed by the employer to the injured person, or to the class of persons to which he belongs, and the injury resulted from the manner of performing the work, over which the com- pany neither reserved nor exercised direction, control or su- pervision, and not from the act of performance itself, and the company owed the employee no duty to provide a safe place to work, or to warn or notify him of missed holes, or to guard him against dangers incident to or created by the prosecution of the work.   (Page 285.)

Appeal from District Court, Fourth District; Hon. *A. B. Morgan,* Judge.

Action by Ernest Dayton against J. S. Free and others.

Judgment for plaintiff. Defendants other than the Snake Creek Mining & Tunnel Company appeal.

Judgment in favor of such company. Plaintiff appeals.

AFFIRMED.

*A. C. Hatch* and *E. A. Walton* for Dayton.

*Howat, Macmillan & Nebeker* for Snake Creek M. & T. Co.

*King & Nibley* and *P. T. Farnsworth, Jr.,* for Free & Taylor.

*J. E. Johnson* for Stewart and other defendants appellants.

STRAUP, J.

The plaintiff brought this action against the Snake Creek Mining & Tunnel Company, a corporation, Free & Taylor, partners, and six others, Stewart *et al.,* partners, to recover damages sustained by him whilst he, as he alleges, was in the employ of all of them working underground in a tunnel, engaged in drilling and blasting. He was injured by the discharge of a "missed hole" at the face of the tunnel, left by a previous and an outgoing shift. The alleged negligence is that the defendants failed and neglected to notify or warn him of the missed hole, by reason of which he was injured while he and others, without knowledge of the missed hole, were drilling holes at the face of the tunnel. All of the defendants denied the alleged negligence, pleaded assumption of risk, contributory negligence, and negligence of fellow servants. The company further pleaded that it let the construction of the tunnel to Free & Taylor as independent contractors; that the plaintiff was not in its employ, but in the employ of Free & Taylor, or Stewart *et al.,* and that it had not charge of, and had not directed or controlled, the work. Free & Taylor averred that they sublet the work to Stewart *et al.* as independent sub-contractors, who employed the plaintiff and other workmen and who had the sole direction and control of the operations and of the work. The case was tried to the court and a jury. The court directed a verdict in favor of the company, and submitted the case to the jury as to the defendants Free & Taylor and Stewart *et al.* A verdict was rendered, and a judgment entered against all of them in favor of the plaintiff. From that judgment Free & Taylor appeal, and claim that Stewart *et al.* joined in the appeal. The plaintiff also appeals from the judgment in favor of the company.

He moves to dismiss the appeal from the judgment in his favor on the grounds that Stewart *et al.* were not properly made parties to that appeal, and that it was not taken in time. He also moves to strike the bill of exceptions on the ground that it was not served or settled in time. The company, Free & Taylor and Stewart *et al.*, in the court below, were each represented by separate and different counsel. Counsel for Free & Taylor, in the notice of appeal appealing from the judgment in favor of the plaintiff, named all of the defendants, except the company, as defendants appealing, and signed the notice in their name and in the name of the attorney who, in the court below, represented Stewart *et al.*, as "attorneys for said defendants." The plaintiff claims, and supports the claim by affidavits, that the attorney for Stewart *et al.*, after verdict and judgment, and on the record, and upon service of notice, withdrew from the case, and no longer represented Stewart *et al.*; and that counsel for Free & Taylor had not represented Stewart *et al.* and disclaimed representing them, and had no authority to appear for or represent them in taking or prosecuting the appeal, nor to sign the name of their former counsel to the notice of appeal, and hence demanded that they be required to show authority in such particular. Counter affidavits were filed to support such authority. It is questionable whether sufficient authority as to all of the defendants, Stewart *et al.*, is shown. And it is also questionable whether the record affirmatively shows, as it is required to show, that the appeal was taken in time. We, however, have concluded to treat the appeal good as to parties and time. But we are of the opinion that the motion to strike or disregard the bill of exceptions as to all of these appellants must prevail. In the first place, no bill at all as to defendants Stewart *et al.* was served or settled. So, as to them, there is no pretense of a bill. There is a purported bill as to Free & Taylor. The judgment from which they appeal was entered on the 16th of August, 1913. There are purported orders attached to the transcript, showing an extension of time to serve and settle a bill to and including January 10 1914. They are not in-

corporated, nor in any manner referred to, in the bill, and are not a part of it. If we, nevertheless, are authorized to notice them, the bill was served and settled in time; otherwise not. Our statute (Comp. Laws 1907, Section 3197) as amended by Chapter 94, Laws 1911, provides what orders are of the judgment roll without a bill. Such as these are not included. To be noticed they, therefore, must be settled in the bill. But that was not done, nor is there any reference whatever made in the bill concerning them. We are authorized to notice only that which is of the judgment roll, or properly settled in the bill which, when filed, becomes a part of the judgment roll. Thus, on the face of the record, it appears that the bill was not served or settled in time; hence, as to these appellants, must be stricken or disregarded.

The only reviewable assignment presented by them, without a bill, relates to the overruling of their demurrer to the complaint. But that assignment was not argued nor referred to, either in the briefs or on oral argument. So **2, 3** for as appellants may abandon it, it is abandoned. Being jurisdictional, however, we may notice the complaint to ascertain its sufficiency to support the judgment. To that extent we look at it, and to that extent we hold it good. Since nothing is claimed for this assignment, we need say no more about it. The judgment appealed from in favor of the plaintiff is therefore affirmed, and his costs, as to these appellants, awarded to him.

Now, as to plaintiff's appeal from the judgment entered against him in favor of the company. As to these parties, plaintiff's appeal and bill are within time, his motion for new trial having been overruled March 28, 1914, and his appeal taken April 13, 1914. The assignment presents **4** a review of the ruling directing a verdict in the company's favor. It was made on the theory that the work of digging and running the tunnel was let by the company to Free & Taylor, independent contractors, who, or Stewart *et al.*, sub-contractors, controlled and directed the work, furnished all material, employed all laborers and employees, including the plaintiff, and controlled and directed them. The material facts relating to such issue as between the plaintiff and the

company are: The company, to develop mining claims in which it was interested, let a written contract to Free & Taylor, contractors (referred to in the contract as "the contractor"), to construct a tunnel 14,350 feet long, nine feet high, and six and one-half feet wide. By the terms of the contract they were required to provide all material and perform all work as specified in "specifications" attached to the contract and made a part of it. The company agreed to pay them $25.16 for each linear foot of tunnel driven in accordance with the specifications. If they failed or refused for six months to do the amount of work stipulated in the specifications—work equivalent to 300 feet each month—or if the company had not sufficient funds to justify a continuance of the work, the company reserved the right to terminate the contract. But in the event it terminated it without fault on the part of the contractors, it was to pay them for all work completed, and to purchase from them at cost all machinery, appliances, tools, material, etc., on hand. The company agreed to furnish necessary dump ground, easements, and rights of way. It was further stipulated in the contract (Article 6) that:

"The contractor agrees that he will employ no person on the work, or in or about the premises herein referred to, unless such persons are satisfactory to the company or its agent, and further agrees to furnish said company, when requested, with a full list of all men employed by him, and that he will promptly discharge any man so employed, at the request of said company, in case a reasonable and sufficient cause is assigned therefor."

In the specifications are specified the objects, extension, and dimensions of the tunnel, provisions made for laying a track, air, and ventilating pipes, and timbering the tunnel, which timbers, track and pipes were to be placed and laid as designated by the company's engineer. The company was required to furnish "one five-drill Sullivan air compressor and receiver, with compressor house, and the necessary electrical equipment for operating said compressor, electric power in quantity sufficient for use in driving the tunnel, the contractor to pay actual cost of power consumed," and a "boarding

house and office buildings not to exceed the cost of $3,000.''
Other specifications are made regarding estimates and pay-
ments to be made every month, but providing for ten per cent.
deduction of payments until the completion of the tunnel to
the satisfaction of the company's engineer, the use and care of
the machinery furnished by the company and interruptions
resulting from strikes, etc.   The company reserved the right,
"at any time during the prosecution and continuance of the
work, to run drifts, cross-cuts, tunnels, upraises, and winzes,
and to conduct and carry on such other mining operations
through and from the said tunnel as it might desire,'' but
which would not interfere with the reasonable prosecution
of the work by the contractors.   The company also reserved
the right "at any time either before or during the construc-
tion of the work, or any portion thereof, to order any addi-
tional work to be done and to make any changes in the work
contracted for, or in its location or position either in line or
grade which it may deem expedient or which the engineer of
the company may direct,'' but in the event of making such
additions or changes it was required to pay the contractors
for all extra work and expenses.   It is also specified that
the contractors were to promptly pay "the sub-contract-
ors, materialmen, laborers and other employees as often
as payments are made to it (them) by the company,''
and upon their failure so to do the company was given the
right to retain from subsequent estimates a sufficient amount
to pay the same.   It is further provided that "all imperfect
or insufficient work or material, when pointed out by the engi-
neer of the company, shall be immediately remedied and
made good and sufficient by the contractor at his own cost
and expense to the satisfaction of said engineer''; and before
final settlement, the contractors were required to furnish evi-
dence satisfactory to the engineer that "the work covered by
this contract is free and clear from all liens for labor and ma-
terials and that no claim then exists against the same for
which any lien could be enforced.''   It was further provided
that the contract was not to become binding until the con-
tractors furnished a satisfactory bond in the sum of $20,000
to insure payment of all contracts, liabilities, and expenses

growing out of the construction of the tunnel under the contract, etc., and to indemnify and hold the company harmless.

Nothing is contained in the contract or specifications by which the company reserved or retained the right to direct or control the prosecution of the work, to employ, control, or direct any of the employees or workmen, except as contained in Article 6. Nor is there any evidence to show that the company in fact directed, controlled, or superintended the prosecution of the work, or hired or discharged employees, or directed, controlled, or superintended them in and about the work, except the engineer furnished the course and grade of the tunnel, designated the places requiring timbering, and designated the places where the track and pipe were to be laid, and at places required widening of the tunnel and extra work to be done to support the roof of the tunnel with reinforced concrete. Because of these, and because the defendant reserved the right to enter the tunnel, to run drifts, crosscuts, etc., as hereinbefore stated; because the contractors were not to employ any one not satisfactory to the company and to discharge any employee at its request upon reasonable and sufficient cause, as stated in Article 6; the provision in the contract relating to its termination, and if terminated without fault on the part of the contractors the company to purchase *at cost* all machinery, material, etc., on hand, the contractors to indemnify the company in respect to liability growing out of the construction of the tunnel; and of the provision giving the company the right to order additional work and to make changes as heretofore stated—the claim is made that the relation between the company and the contractors was not that of independent, but non-independent, contractors. We do not think the claim tenable. To support it the plaintiff cites and relies on 1 Thompson Neg. 659-661; 1 Bailey Personal Injuries, p. 108; *Barg* v. *Bousfield,* 65 Minn. 355, 68 N. W. 45; 1 Shear. & Redf. Neg. (4th Ed.) 164; Moll, Ind. Contr., pp. 48, 63; *Harmon* v. *Contracting Co.,* 159 N. C. 22, 74 S. E. 632; *Quayle* v. *Sewerage & Water Board,* 131 La. 26, 58 South. 1021; *Atlantic Trans. Co.* v. *Coneys,* 82 Fed. 177, 28 C. C. A. 388. We do not think the cited authorities uphold him. They relate to instances and cases where the proprietor or employer

reserved or exercised the right to superintendent, direct or control the work, not only with respect to results, but also with reference to methods of procedure or means by which the result was to be accomplished, where the will and discretion of the contractor as to the time and manner of doing the work or the means and methods of accomplishing the results were subordinate and subject to that of the owner or proprietor. We do not find anything in the contract or the evidence which brings this case within such a rule. The things pointed to, in our judgment, do not justify a finding that the company reserved the right to direct, control, or superintend the work, or that it in fact directed or controlled the time or manner of doing it, or the means and methods by which the results were to be accomplished. The thing most nearly approaching that is Article 6 of the contract; but when it is considered in connection with the whole of the contract no such direction or control is fairly deducible. The case, as we think, is analogous to that of *Callahan* v. *Salt Lake City*, 41 Utah 300, 125 Pac. 863, where it was held that the relation of independent contractor existed.

The further claim is made that the company could not, by an independent contract, relieve itself from liabilities for injuries such as the plaintiff sustained because of the inherent danger of the work. The rule as to that is stated in 1 Labatt's Mast. & Serv., Section 41, thus:

"The general rule that the employer of an independent contractor is not liable for an injury resulting to a third person from a tortious act committed by himself or his servants is subject to three exceptions, viz.: (1) Where the injury was the direct result of the stipulated work; (2) where the work was intrinsically dangerous, and the injury was a consequence of the failure of the contractor to take appropriate precautions; (3) where the injury was caused by the non-performance of an absolute duty owed by the employer to the complainant, individually or to the class of persons to which he belongs."

In 26 Cyc. 1557:

"Where the act which causes the injury is one which the contractor was employed to do, and the injury results, not from the manner of doing the work, but from the doing of it at all, the employer is liable for the acts of his independent contractor. So

where the work which the contractor is employed to do is wrongful in itself, or if done in the ordinary manner would result in a nuisance, the contractee is liable for injury resulting to third persons, although the work is done by an independent contractor. For instance, where the work involves the commission of a trespass, or where a trespass is committed by the advice or direction of the contractee, he cannot escape liability because the work was done by an independent contractor. * * * Another exception to the general rule, closely related to the one just considered, is that where the work is dangerous of itself, or, as often termed, is 'inherently' or 'intrinsically' dangerous, unless proper precautions are taken, liability cannot be evaded by employing an independent contractor to do the work. Stated in another way, where injuries to third persons must be expected to arise unless means are adopted by which such consequences may be prevented, the contractee is bound to see to the doing of that which is necessary to prevent the mischief. The injury need not be a necessary result of the work; but the work must be such as will probably, and not which merely may, cause injury if proper precautions are not taken."

The proposition is well put in 1 Thomp. Com. Neg. Section 646:

"As well stated in recent cases in New York, there are but three cases in which the owner of fixed property is responsible for acts done upon it which result in injury to another: First, where the person doing the act stands toward the proprietor in the relation of employee or servant; second, where the act as authorized by a contract between the proprietor and actor necessarily produced the injury; and, third, where the injury was occasioned by the omission of some duty imposed on the proprietor."

Other cases are cited by the plaintiff to the same effect. The rule as thus stated is conceded; but we do not think the case falls within it. *State* v. *General Stevedoring Co.* (D. C.), 213 Fed. 51; *Samuelson* v. *Cleveland Im. Co.*, 49 Mich. 164, 13 N. W. 499, 43 Am. Rep. 456; *Bibb's Adm'r* v. *Norfolk & W. R. Co.*, 87 Va. 711, 14 S. E. 163; *Houghton* v. *Loma Prieta Lumber Co.*, 152 Cal. 500, 93 Pac. 82, 14 L. R. A. (N. S.) 913, 14 Ann. Cas. 1159; *Kendall* v. *Johnson*, 51 Wash. 477, 99 Pac. 310. The injury here was not the direct result of the stipulated work, but from the manner of doing it—from the failure or negligence of some one to warn the plaintiff of the missed hole or to establish and promulgate rules giving notice

of such fact.  Nor was the injury caused by the non-perform-
ance of a duty owing by the company to the plaintiff.  He was
directly employed by Free & Taylor, or Stewart *et al.*, and
not by the company.  Nor was he subject to its direction or
control.  And, as has been seen it having neither reserved nor
exercised direction or control over the work, or the time or
manner of doing it, it owed him no duty to provide a safe
place to work, or to warn or notify him of missed holes, or to
guard him against dangers incident to or created by the pros-
ecution of the work, and certainly not to guard or protect him
against the negligence of those who had employed him or with
whom he labored.  But it is said developing a tunnel by un-
derground blasting is dangerous.  Dangerous to whom?  Here,
only to those engaged in and about the work.  So is feeding
a threshing machine or working at sawmilling dangerous.  An
inexperienced employee, unguarded against attendant dangers
and attempting such work, may probably be injured.  Who,
if any one, owes him duties of warning and protection?  He
who employed or directed or controlled him, or directed or
controlled the threshing or sawing.  Certainly not the farmer,
who did no more than merely contract with the thresher to
thresh his grain, or with the sawmiller to saw his timber.
Further, and as stated by Chief Justice Cockburn, in *Bower*
v. *Peate,* 1 Q. D. Div. 321:

"There is an obvious difference between committing work to the
contractor to be executed from which, if properly done, no injurious
consequences can arise, and handing over to him work to be done
from which mischievous consequences will arise unless preventive
measures are adopted."

Here the stipulated work itself, constructing and develop-
ing the tunnel, did not involve injurious or mischievous con-
sequences to others.  And the injury to plaintiff was not
caused from the act of performance, but from the manner of
performance over which, as has been seen, the company
neither reserved nor exercised direction, control, or super-
vision.  We think, therefore, that the case comes within the
general rule that when a person employs a contractor to do
work lawful in itself and involving no injurious consequences
to others, and damage arises to another through the negli-

gence of the contractor or his servants, the contractor, and not the employer, is liable. We think the ruling right.

The judgment thus appealed from by the plaintiff is affirmed with costs.

McCARTY, C. J., and FRICK, J., concur.