# REQUA v. DALY-JUDGE MINING CO.

## No. 2705.   Decided April 21, 1915 (148 Pac. 448).

1. APPEAL AND ERROR—DECISION—EFFECT ON SECOND APPEAL.  A decision by the Supreme Court that a certain defendant is not liable in a personal injury action is controlling on that question on a subsequent appeal.  (Page 94.)

2. WITNESSES—IMPEACHMENT—INCONSISTENT STATEMENTS — OMISSIONS.  Evidence in a personal injury action that a witness, while testifying before a coroner's jury as to the accident, had omitted to testify as to matters to which he testified in a deposition subsequently taken, was not improperly admitted as being in impeachment without a proper foundation made, where he had first been interrogated and given opportunity to explain the omission.  (Page 94.)

3. WITNESSES—IMPEACHMENT—INCONSISTENT STATEMENTS—FOUNDATION.  To impeach a witness on the ground of former inconsistent statements or omissions, foundation must first be laid by asking him if he made such statements, or directing his attention thereto, with the time, place and circumstances, so that he may have full opportunity to admit, deny or explain them.  (Page 97.)

4. EVIDENCE—OPINION—CONCLUSIONS OR FACTS.  An answer in a personal injury action that it was the "duty" of certain employees to examine as to the safety of the place of work, in response to a question as to what was the "custom" in that respect, was not erroneously admitted as stating a conclusion.  (Page 99.)

5. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—CONDUCT OF COUNSEL.  In a personal injury action against independent contractors, a question asked one of defendants as to whether work had been suspended because the firm was insolvent, which was immediately withdrawn, was not prejudicial error.  (Page 100.)

6. TRIAL—ARGUMENT OF COUNSEL—MATTERS NOT SUSTAINED BY EVIDENCE.  In an action for injuries due to the falling of a rock in a tunnel, a statement by defendant's counsel in argument that the rock was caused to fall by the removal of its supports by deceased was not improper as not being supported by evidence, where such statement was, at most, a faulty deduction from evidence in the record.  (Page 101.)

7. TRIAL—CONDUCT OF COUNSEL—REMARKS TO OPPOSING COUNSEL. Statements by defendant's counsel in a personal injury case during the noon recess, directed to plaintiff's counsel in the hearing of the jury, as follows: "State your name, age and place of residence." "He is a good witness. He is mum." "There was a time when lawyers would row and quarrel with each other and indulge in personal remarks, but that time is over"— to which no reply was made, did not constitute improper conduct of counsel. (Page 102.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by Rose Requa, individually and as guardian ad litem, etc., against the Daly-Judge Mining Company and others.

Judgment for defendants. Plaintiff appeals.

AFFIRMED.

*Henry Shields* and *M. E. Wilson* and *E. A. Walton* for appellant.

*King & Nibley, P. T. Farnsworth, Jr.,* and *Howat, Macmillan & Nebeker* for respondents.

FRICK, J.

The plaintiff, in her own right, and as guardian *ad litem* for her minor children, brought this action to recover damages for the alleged wrongful death of her husband. The action was originally commenced against the Daly-Judge Mining Company, E. A. Taylor, and J. S. Free, as partners, and against the Snake Creek Mining & Tunnel Company. Before the trial plaintiff dismissed as to the defendant Daly-Judge Mining Company, and therefore that company is out of the case. After the evidence was all in, the court directed the jury to return a verdict in favor of the Snake Creek Mining & Tunnel Company upon the ground that said Free & Taylor were independent contractors. The case was then submitted to

the jury as against said Free & Taylor, and the jury returned a verdict, in their favor. Judgment was duly entered, from which plaintiff appeals.

The appeal also includes the judgment in favor of the Snake Creek Mining & Tunnel Company. The case, upon that question was submitted to us upon the briefs filed and authorities cited in the case of *Dayton* v. *Free et al.*, which was submitted to this court at the May, 1914, term, and decided December 1st following. *Dayton* v. *Free et al.*, 46 Utah, .., 148 Pac. 408. We held in that case that said Free & Taylor, in constructing the tunnel in which the deceased was killed, were independent contractors, and that, therefore, said Snake Creek Mining & Tunnel Company was not liable for the accident. That decision controls this case upon that question, and therefore the appeal against said company must fail in this case for the same reasons that it failed in the Dayton Case, *supra*.

This brings us to the assignments of error against the judgment in favor of Free & Taylor. We shall state so much of the evidence as we deem necessary in connection with the points decided.

The first assignment relates to the admission of evidence which counsel insist was improperly admitted as being in impeachment of one of plaintiff's witnesses without having properly laid a foundation for the admission of such evidence. The alleged impeaching evidence was admitted to show that one Patrick Tierney, a witness for plaintiff, a few days after the accident, while testifying as a witness before a coroner's jury which was inquiring into the cause of the accident, had omitted to testify to some matters which he testified to in his deposition which was taken to be used, and which was used, at the trial of this case. The witness, on cross-examination by counsel for Free & Taylor, was asked and answered the following, among other, questions (we quote from the original bill of exceptions): After asking the witness whether or not he had testified as a witness before the coroner's jury, and receiving his answer in the affirmative, he was asked:

"Q. Did you tell the court at the time of that coroner's

inquest, when those jurors were there sitting and hearing that case—did you tell them that Abplanalp (the foreman for Free & Taylor) told Requa (the deceased) that it was safe, and ordered him to put up his bar, put up his machine? A. Yes, sir; if they asked that question, I did. Q. Well, did you tell them that then? A. It seems like I did. I am not sure though. Q. It seems like you did? A. Yes, sir. Q. You knew what you were there for? A. Yes, sir. Q. To tell what you knew about this matter? A. To tell whatever they asked me, just the same as now. Q. Did you tell them? A. I told them the truth, whatever they asked me.   *   *   * Q. Can't you answer? Haven't you any recollection as to whether you told them at that time, a day or two or three days after this thing occurred, whether Abplanalp told Requa that it was safe, and to go ahead and put up his bar, that is, his machine? A. I did; I told you I did tell them that. Q. You have a recollection of doing so? A. Yes.''

There are more of the same kind or character of questions and answers, but the foregoing sufficiently illustrates the state of the evidence upon the subject. It seems that it was contended by counsel for Free & Taylor that the witness at the coroner's inquest had not testified to the fact that Abplanalp, the foreman for Free & Taylor, had induced or ordered the men working at or near the face of the tunnel, including the deceased, to proceed to work, and that the place was safe for them to do so. It was made to appear that Requa was killed a short time after the alleged order or statement was made by the foreman by a rock which fell partly from the roof and partly from the upper side of the tunnel, and a few feet from its face, which rock the men working there, including the deceased, had tried to pry down a little while before it fell, which they did not succeed in doing. It was a matter of some importance, therefore, for plaintiff to show that the foreman had pronounced the place safe and had directed the deceased to go to work at or near the rock which fell and killed him. The witness, in his deposition, testified that the foreman had stated that the place was safe, that it was all right, and told the men, including the deceased, to continue their work. What has been said sufficiently ex-

plains the purpose of Free & Taylor's counsel in asking the witness the questions we have set forth. Counsel for Free & Taylor called Mr. Taylor as a witness, and, after showing by him that he had attended the coroner's inquest, and had heard Mr. Tierney testify, the witness was asked and answered (again quoting from the bill of exceptions) the following questions:

"Q. I will ask you whether, at that time and place, Mr. Tierney said that Frank Abplanalp had ordered that he put up the bar and go to work, and that it was all right, or anything in substance like that. Mr. Wilson (counsel for plaintiff) : I object to that on the ground it is incompetent, immaterial, and irrelevant; no proper foundation having been laid, and not being proper subject-matter of impeachment, whether he said it there or did not say it. The Court: The objection is overruled. Mr. Wilson: Exception. A. He did not. * * * Q. Did he say, during that testimony, that Abplanalp said it was all right, or anything in substance like that? Mr. Wilson: Same objection. The Court: The objection is overruled. Mr. Wilson: Exception. A. To the very best of by recollection, he did not.''

This is practically all the court admitted upon that subject. It is now urged that the impeachment in question is what, by the text-writers, is termed impeachment by significant omissions, and that such impeachment is proper only where it is shown that the witness was especially interrogated respecting the particular matter upon which he is sought to be impeached, and that he then omitted to state the matter. In that connection it is contended that the proper foundation was not laid to admit the impeaching evidence, for the reason that it was not shown that the witness was interrogated at the coroner's inquest respecting the things alleged to have been omitted. It seems to us, however, counsel assumes a fact which, to say the least, is open to serious controversy. While it is true that, on the one hand, it could be argued from the face of the record that it does not appear that the witness was asked specific questions at the coroner's inquest, yet it is equally true that, upon the other hand, from the same record it can fairly be argued that he was, and that the ad-

missions he made are to that effect.  At most, therefore, the
fact of whether the witness was or was not specially interro-
gated upon the subject is a matter of inference or deduction
from what he testified to in his deposition.  The witness, how-
ever, insists that he did testify to the same facts at the coro-
ner's inquest that he did in his deposition.  Wherein is it
material, therefore, whether he was asked the specific ques-
tions at the inquest or not?

It certainly will not be disputed what has become element-
ary practice; namely, that a witness may be im-
peached by showing that he has made contradictory       **3**
or variant statements, either under oath or otherwise,
provided that (in most jurisdictions) the witness' attention
has first been directed to the alleged contradictory or variant
statements and the time, place, and circumstances under which
they were made.  In 5 Jones, Com. Evidence, Section 845, in
speaking upon this subject, the author says:

"But there is hardly any more familiar practice in judicial pro-
cedure than that of impeaching witnesses by proof of their former
statements which are inconsistent with their present testimony.
Since such attempted impeachment is a direct attack upon the tes-
timony of the witness, and may result in serious consequences, it
is important that the practise should be so regular that the witness
may have full opportunity to admit or deny or explain any statement
which is thus assailed.  The authorities, except those in some of
the New England states, are almost unanimous to the effect that,
before a witness can be impeached by proof that he has made state-
ments contradicting or differing from the testimony given by him,
a foundation must be laid by interrogating him as to whether he
had made such statements.  The interrogation may extend to an
inquiry as to important omissions from such original statement when
it was his duty to tell the whole truth.  Such an omission may
create a presumption that the omitted facts did not transpire and
may tend to contradict the testimony of the witness.  This occurs
especially where the witness was questioned concerning the par-
ticular matter and failed to disclose his knowledge.  Otherwise the
omission is insignificant or so capable of explanation as to negative
any basis for impeachment."

The author then proceeds to show what constitutes a suffi-
cient foundation.  Ordinarily that is sufficiently laid when

the witness' attention is sharply directed to the alleged statements or omissions with time, place, and circumstances added so as to give him full opportunity to explain the statements or omissions attributed to him. If the witness does not admit that he made the statements attributed to him, witnesses may then be called by the adverse party to show that he did so state. Further, if he does not concede that he made the important omissions in his former testimony or statements, witnesses who heard all of his testimony or statements upon the subject may again be produced to prove the omissions. In 7 Ency. Ev. 156, it is said:

"It is also proper to cross-examine a witness as to his significant omissions. * * * Where, on cross-examination, the assailed witness does not distinctly admit that he made the omission, it may be proved to impeach him. When he admits having made it, it is also proper in some jurisdictions to prove it, but in others such proof should be excluded."

It is, no doubt, true that when a witness is especially interrogated with regard to a particular occurrence or transaction, and he omits to state certain material matters, which he, on a subsequent hearing, supplies, and the fact that he was especially interrogated is shown, then the effect that shall be given to his testimony or upon his veracity may be very different than if the witness had merely made a general statement without having been especially questioned with respect to the matter in question. These, however, are ordinarily mere matters of detail, and go to the weight that should be given to the fact that omissions occurred, and not to the competency of the evidence by which they are shown. The question is one of weight, therefore, rather than, as counsel argues, one of competency. The material thing upon such an inquiry is that the assailed witness be given a fair and full opportunity to explain his variant statements or omissions. It has frequently been held that, although a witness is impeached by showing variant statements without first laying a proper foundation, yet, if he is given ample opportunity to explain the discrepancies in his testimony or statements, then the error in not laying a precedent foundation is, ordinarily, not prejudicial. This, in the nature of things, is

clearly right; since the so-called foundation is nothing more than to afford the witness an opportunity to explain any real or apparent discrepancies. A mere cursory examination of even the small part of the record we have set forth discloses that the witness Tierney was given every opportunity to explain the alleged omissions, and hence the authorities cited by counsel have no application here. Indeed, none of the authorities cited in any way conflict with the rule laid down by Mr. Jones as we have stated it. In view of what we conceive to be the settled law and practice, we are clearly of the opinion that the district court committed no error in admitting the evidence complained of.

It is next contended that the court erred in refusing to sustain the objection to a question propounded to Mr. Taylor, one of the defendants, and also one of the contractors. We again quote from the record:

"Q. State what the custom was of machine men when they went on shift making or not making examination. A. It was their duty to make a thorough examination to protect themselves. Mr. Wilson: I object to that as being incompetent, calling for a conclusion of the witness. The Court: The objection is overruled. Mr. Wilson: Exception."

Referring to this matter, counsel in their brief say:

"It may be that the question was proper, but it will be noticed that the objection of the appellants was made to the answer on the ground that it was incompetent and a conclusion. It is submitted that the matter requires no argument."

Now, if counsel are given the full benefit of the objection, yet it should not prevail. As appears from the brief, it is not disputed that the question was proper. If that be so, then, it seems to us, the answer was also proper. If the witness had substituted the word "custom" for the word "duty," the answer would strictly have followed the question. But it is manifest that the word "duty" used by the witness was used in the sense of "custom"; that is, instead of saying it was the machine men's custom to make an examination, he said it was their duty to do so. In view of the record, the effect of using the word "duty" was practically the same as

though the word "custom" had been used, although the former term is the stronger one of the two. Besides, the answer, strictly speaking, is not a mere conclusion. It is, at most, one of those answers which partake of both a conclusion and a statement of fact. At all events, under the circumstances, no prejudice could have resulted to the plaintiff, and hence the assignment cannot prevail.

Another assignment relates to the alleged misconduct of one of the defendants' counsel. From the bill of exceptions it is made to appear that for some reason the contractors, Free & Taylor, for a time at least, ceased to carry on the work of constructing the tunnel in which the accident occurred. One of defendants' counsel, on cross-examination, propounded the following question: "Q. As I understood you to answer Mr. MacMillan, some trouble arose, and Free & Taylor were forced out from having anything to do with the work? A. Yes. Q. Forced out—broke?" Counsel for plaintiff then said: "I object to that." The defendants' counsel then immediately said: "I will withdraw it." Whereupon plaintiff's counsel continued his objection, and said: "I object to that and except to the statement as misconduct, the intimation that they were broke, as very improper." The Court: "The objection is sustained." Thus ended the whole matter. It is now vigorously contended that the statement by counsel that defendants were "forced out— broke," that is, that they were practically forced out insolvent, constitutes prejudicial error, for the reason that it may have influenced the jury in arriving at the verdict in favor of the defendants. If Free & Taylor were broke or insolvent, it is argued, the jury may have arrived at a verdict in their favor, because one against them would have been useless. Such a conclusion seems to us strained. While it is true that counsel's question was improper, and he conceded that it was by withdrawing it, yet it was one of those improprieties which frequently occur during the progress of a heated trial. If verdicts shall be set aside, and judgments reversed for such things, but few verdicts can stand. Moreover, such a trifle, for such it was, would not be likely to influence any juror in arriving at a verdict. If it should be said that it did,

then it must necessarily follow that a juror so influenced would be wholly unfit to sit on any case, and we cannot assume that such was the fact. Besides, as the record stands, there is nothing but an improper question which remains wholly unanswered. While, no doubt, prejudicial error can be committed by merely asking improper questions, especially if they are repeated, yet where, as here, only one question is asked, which, as soon as counsel's attention is directed to it, is immediately withdrawn, there, ordinarily at least, is not the slightest probability that prejudice resulted. To hold otherwise would result in laying down a rule which would be productive of much more mischief than good.

It is further contended that one of defendants' counsel was guilty of misconduct in his argument to the jury. As already stated, the death of the deceased was caused by a large rock falling from the roof and side of the tunnel in which he was working. The rock fell some **6** time after certain blasts had been discharged in the face of the tunnel. In blasting large loose rock and debris, usually called "muck," was forced from the face of the tunnel, and was left at and near the face extending back on the sides of the tunnel for some distance. Some of this muck had to be removed in order to permit the machines to be again set for the purpose of drilling fresh holes in the face of the tunnel preparatory for another blast. It seems that the deceased at the time of the accident was engaged in removing some of the muck from the face and sides of the tunnel to make room for the setting of the machines. The muck, the testimony showed, extended upon the sides of the tunnel for about four feet or so. Some of it extended up to the point where the rock in question was before it fell. The offending counsel, in his argument to the jury, insisted that the deceased contributed to the accident by removing the muck from under the rock which fell upon him, and he thus, in removing the muck, had also removed that which supported the rock or kept it from falling. Plaintiff's counsel contended that counsel thus offended against the rules of proper conduct by making statements not supported by the evidence or upon a matter on which no evidence was produced. It is true that no

witness stated in direct terms that the muck supported the rock, or that it had a tendency to do so. The lack of such evidence could, however, not prevent counsel from drawing his own inferences and making his own deductions from other evidence. The evidence was to the effect that the muck was piled up against the sides of the tunnel as high or higher than the lower side of the rock which fell. That the muck supported the rock in question may have been a weak, yes, even a fallacious, deduction to make, but it was not, as plaintiff's counsel contend it was, a statement of fact contrary to or not produced in evidence. At most, it was a faulty, and perhaps a very far-fetched, deduction or inference, but such deductions or inferences are often made, and they cannot be controlled by the courts. Most of us at times cease to be strictly logical, and we fear that a rule which penalized clients because the arguments and deductions of their attorneys were not always in strict harmony with the rules of logic would result in destroying the utility of courts, and lead to consequences concerning which we do not care to speculate.

Finally, it is contended that the same counsel was guilty of misconduct as follows: During the noon recess, and while the jurors were in the jury box, and while one of plaintiff's counsel was sitting in the court-room near the jury box, the offending counsel also came into the court-room and addressed plaintiff's counsel thus: "State your name, age, and place of residence." Plaintiff's counsel remained silent, and counsel then said: "He is a good witness. He is mum." Again plaintiff's counsel made no reply. It is alleged that the offending counsel, still addressing counsel for plaintiff, said: "There was a time when lawyers would row and quarrel with each other and indulge in personal remarks, but that time is over." We confess our entire inability to grasp the offense which is supposed to lurk in counsel's question and statements. Is it possible that jurors can be influenced by what, *prima facie* at least, seemed to be mere pleasantries? We are not prepared to concede that such is, or ever can be, the case. We attribute counsel's insistence that the foregoing matters constituted prejudicial error to their zeal for the interests of their client. Great allowance must

be made for counsel's zeal, and such is especially true in cases where, as here, the widow and orphaned children are seeking compensation for the loss of the husband and father, the bread winner of the family. Under such circumstances what may to others seem trivial will, through zeal of counsel, be greatly magnified. Undue zeal, therefore, under some circumstances, may be pardoned. The law, however, makes allowance for all those things, and the courts necessarily must do so.

We have thus considered and discussed every assignment, and, after a careful examination of the record, we are forced to the conclusion that no prejudicial error is shown, and that the judgment should be affirmed. Such is the order; defendants to recover costs.

STRAUP, C. J., and McCARTY, J., concur.