**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 22 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEVE THOMPSON,

    Plaintiff - Appellant,

    v.

MOBIL EXPLORATION &
PRODUCING NORTH AMERICA,
INC., a corporation; MOBIL
EXPLORATION & PRODUCING
U.S. INC., a corporation,

    Defendants - Appellees.

No. 96-4200
(D. Utah)
(D. Ct. No. 95-CV-347 )

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **KELLY**, and **LUCERO**, Circuit Judges.

---

Steve Thompson filed suit against Mobil Exploration and Producing North

America, Inc. and Mobil Exploration and Producing U.S., Inc. (collectively,

"Mobil"), to recover damages for injuries he sustained while he was an employee

of Pump Jack Services, Inc., an independent contractor doing work for Mobil.

The district court entered summary judgment on Mobil's behalf on several

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

grounds. We take jurisdiction under 28 U.S.C. § 1291 and affirm.

I.     Background

In 1992, Mobil contracted with Pump Jack to replace the wooden bases under several of Mobil's pump jack units on the Aneth Oil Field in San Juan County, Utah. A pump jack unit is a machine used in the oil industry to pump oil out of the ground at a well site. It employs a counterweight attached to a rotating crank arm. In April 1993, Thompson was a field foreman for Pump Jack, primarily responsible for overseeing crews working on pump jack units. His responsibilities included ensuring the crew's safety. Thompson had several years of experience working on pump jack units. Mobil's safety policy required workers to follow a lockout/tagout procedure before performing any work on a unit. This procedure, which shuts off the unit, is recognized in the oil industry as a standard safety procedure to be followed prior to working on pump jack units.

On April 13, 1993, Thompson's crew planned to move one of Mobil's pump jack units in order to install a concrete pad under it. While waiting for a Mobil employee to bring a rod stand to disconnect the unit's carrier bar from the rods and well, Thompson and his crew removed a guard fence from around the unit while it was running. After they removed the fence and without following the lockout/tagout procedure to shut off the unit, Thompson proceeded to measure the unit's base with a tape measure. While taking the measurements, Thompson

placed his head in the sweep area of the pump jack counterweight. The unit's crank arm struck him in the head. A member of Thompson's crew pulled Thompson out from beneath the unit's crank arm before it could make another revolution. Thompson suffered serious head and facial injuries. He filed suit against Mobil in negligence, seeking to recover damages for his injuries.

Mobil moved for summary judgment. The district court granted the motion, basing its decision on three separate grounds. The court concluded that Thompson assumed the risk of his injuries; that Mobil owed Thompson no duty with respect to his injuries; and that the proffered evidence could only lead a reasonable juror to conclude that Mobil was not negligent and that Thompson was 100 percent at fault.

In opposition to Mobil's summary judgment motion and again here on appeal, Thompson asserts that there are disputed questions of material fact with respect to fault, apportionment of fault, causation, and the amount of compensable damages. He disputes the applicability of the assumption of risk doctrine under Utah law in the workplace context and under Utah's comparative fault system. He specifically asserts that Mobil owed him duties, which it breached, to ensure that his workplace was safe, to provide him with safe equipment, and to supervise workplace activities. In support of his position, Thompson primarily relies upon the letter and testimony of his expert, a professional engineer active in oil field

equipment design. The expert concluded that Mobil should have equipped the pump jack unit with a permanent guard gate that would serve as a barrier between workers and the unit and that would automatically shut the unit down when the gate was opened or removed. See Appellant's App. at 228. The expert also stated that the crank arm's rotation direction created an unnecessary and avoidable risk of harm. See id. The expert believed that Mobil should not have relied solely on the lockout/tagout procedure to ensure worker safety. See id. at 229.

Mobil's argument is threefold, tracking generally the grounds stated by the district court in granting summary judgment. First, Mobil relies on the doctrine of primary assumption of risk, asserting that Thompson assumed the risk of his injuries, and thus his claims should be barred. Second, Mobil contends that as a landowner it is not required to protect the employees of an independent contractor from hazards that arise directly from work the contractor was hired to perform on the land. Thus, Mobil argues that it owed no duty to Thompson with respect to his injuries. Third, Mobil argues that the evidence leads to only one possible inference regarding causation—that the defendant was 100 percent at fault.

II.     Discussion

We review summary judgment decisions using the same legal standard applied by the trial courts, according no deference to the trial court's legal conclusions concerning whether the material facts are in dispute and, if they are not, the legal result that obtains. Eastman Kodak Co. v. Westway Motor Freight, Inc., 949 F.2d 317, 319 (10th Cir. 1991). Summary judgment is proper only if the pleadings, depositions, affidavits, and admissions, when viewed in the light most favorable to the non-moving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995).

The first, and ultimately dispositive, question that we address in this negligence action is whether Mobil owed the plaintiff any duties with respect to his injuries, for if Mobil owed him no duties, he has no case. The parties agree that Utah law governs all aspects of this case. We have previously addressed the questions of Utah law raised by this case. In Texaco, Inc. v. Pruitt, 396 F.2d 237 (10th Cir. 1968), an employee of an independent contractor hired by Texaco to service one of Texaco's oil wells was injured when the well's horsehead fell on him. See id. at 240. The employee sued Texaco in negligence. The trial court submitted the case to the jury, which returned a verdict for the plaintiff. On

appeal, Texaco argued that the trial court should have directed a verdict in its favor because the plaintiff produced no evidence of actionable negligence on Texaco's part. See id. In reviewing the case, we first considered "the nature of the legal duty owed by Texaco to [the plaintiff] and the situations under which this duty becomes operative." Id. We said:

> It is the general rule, applicable in Utah, that an owner of premises or the general contractor of work being performed thereon, who has neither reserved nor exercised direction or control over the particular work being performed by a contractor or subcontractor, as the case may be, owes no legal duty to provide an employee of the contractor or subcontractor "a safe place to work . . . or to guard him against dangers incident to or created by the prosecution of the work, and certainly not to guard or protect him against the negligence of those who had employed him or with whom he labored." Such an owner or general contractor is, however, under a legal duty to warn or guard against concealed or latent conditions of danger on the premises of which he has or ought to have knowledge and of which the employee has none.

Id. (quoting Dayton v. Free, 148 P. 408, 412 (Utah 1914)) (other citations omitted). We determined that Texaco exercised no direction or control over the work the plaintiff was performing, and therefore, only had the duty to warn him of any concealed or latent conditions of danger on the premises. See Texaco, 396 F.2d at 240. We affirmed the jury's verdict because the evidence supported a factual finding that the unintended and unexpected release of the well's horsehead was a latent condition of danger. See id. at 241.

Mobil in this case, like Texaco in Pruitt, did not exercise any direction or

control over the particular work that Pump Jack and its employees were performing. The contract between Mobil and Pump Jack makes this clear. Paragraph two in the contract provides:

> Contractor [i.e., Pump Jack] shall do and perform the Work as an independent contractor, free of control or supervision of the Company [i.e., Mobil] as to means and method of performance. All persons engaged in the performance of said Work shall be the agents, servants or employees of Contractor or its subcontractors, but not of Company. Neither Contractor nor its agents, servants, employees or subcontractors shall hold themselves out as employees of Company.

Contract, Appellant's App. at 142. Pump Jack also agreed to "provide a competent supervisor or foreman on the job site when the Work is in progress," and "ensure that Contractor, its employees, agents and subcontractors comply with all applicable safety related rules, regulations and standards pertaining to the Work." Id.

Because Mobil did not exercise any direction or control over the particular work that Pump Jack and its employees were performing, the only duty that Mobil owed Thompson was the duty "to warn or guard against concealed or latent conditions of danger on the premises of which [the defendant] ha[d] or ought to have [had] knowledge and of which [the plaintiff] ha[d] none." Pruitt, 396 F.2d at 240. This duty included warning of hidden dangers in the pump jack unit.

Here, though, there is no question that the rotating crank arm of the pump jack unit was not a hidden danger such that Mobil had a duty to warn of or guard

against it. Rather, the danger posed by the arm was well known to Thompson and others. In his deposition, Thompson testified that he knew it was not safe to work around the unit while it was still running:

Q: And you knew that [working around the unit while it was still running] was not a safe thing to do, correct?
A: I would just as soon have the unit shut down, yes.
Q: So you knew it was not a safe thing to do, correct?
A: The thing--
Q: Just answer my question.
A: --to have done was shut the unit down.
Q: The safe thing to do would have been to shut the unit down, correct?
A: Correct.

Appellant's App. at 126. Furthermore, Thompson's own expert testified, "It's only appropriate [to be working within the crank sweep area of a pumping unit while the unit is operating] if you want to commit suicide. It's a good way to do it." Id. at 385. When asked whether this danger was commonly recognized in the oil industry, Thompson's expert responded, "I don't think anybody would disagree with you." Id. at 386. Thus, while Mobil did owe Thompson a duty to warn of hidden dangers in the pump jack unit, Thompson proffered no evidence that Mobil breached this duty.

Thompson's expert witness opined that Mobil should have reversed the rotation direction of the crank arm and also should have installed a gate that, when opened, automatically stopped the unit. This evidence is not, even when viewed in a light most favorable to Thompson, evidence that Mobil breached its

duty to warn of concealed dangers in the pump jack unit.  Had Mobil owed

Thompson a duty to ensure a safe workplace or supervise workplace activities, as

he contends, this evidence would be pertinent.  As our decision in Pruitt teaches,

however, Mobil did *not* owe him a duty to ensure that the workplace was safe or

to supervise workplace activities.[1]  Indeed, Thompson was himself responsible for

supervising the Pump Jack crew and ensuring that they complied with all safety-

related rules.

The danger that Thompson encountered—the rotating crank arm—was

---

[1] Thompson argues that the principles that we articulated in Pruitt are no longer good law in Utah.  He points to a provision in Utah's workers' compensation statute that allows an injured employee to "maintain an action for damages against any of the following persons who do not occupy an employee-employer relationship with the injured . . . employee at the time of the employee's injury . . . :  (a) a subcontractor; (b) a general contractor; (c) an independent contractor; (d) a property owner; or (e) a lessee or assign of a property owner."  Utah Code Ann. § 34A-2-106(4) (Michie 1997).  In enacting this provision, the Utah legislature made clear that even though the above-mentioned parties can be "statutory employers" and "contingently liable for the payment of workers' compensation benefits" to injured employees, the workers' compensation statute does not shield them from general tort liability if they were in fact negligent.  See Pate v. Marathon Steel Co., 777 P.2d 428, 430 (Utah 1989) (examining predecessor provision).  The statute did not, however, expand the duties that any of those parties owe to employees.  Thus, the plaintiff is wrong when he states that "Pruitt appears . . . to have been eclipsed by the quoted statutory language."  Appellant's Reply Br. at 10.

In addition, we have conducted a thorough review of Utah case law since our decision in Pruitt.  We have found no cases, nor could the plaintiff point us to any, that suggest that the principles that we articulated in Pruitt are no longer good law.  To the contrary, at least one Utah case decided after Pruitt supports our holding here.  See Ellertson v. Dansie, 576 P.2d 867, 868 (Utah 1978) ("Where there is a dangerous condition on one's property, which is just as observable to an invitee as to the owner, the owner has no duty to warn or to protect the invitee . . .").

readily apparent. Mobil had well publicized that workers should follow the lockout/tagout procedure before doing any work on a pump jack unit. Thompson decided not to follow the procedure but rather to work on the unit while it was operating. Because Thompson's injuries resulted from a known danger, we agree with the district court that Mobil owed Thompson no duty with respect to his injuries. Mobil's only "legal duty was to guard against hidden dangers inherent in the premises rather than unsafe conditions incident to or created by the work being done," Pruitt, 396 F.2d at 241, and Thompson proffered no evidence that Mobil breached this duty. Because there are no genuine issues of material fact on this point, summary judgment in favor of Mobil was appropriate.

In light of the above, we need not address whether the district court correctly concluded that the assumption of risk doctrine barred Thompson's claims or that a reasonable jury could only conclude that Thompson was 100 percent at fault.

The judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Circuit Judge