2008 UT 4

**Marlene BEGAYE, individually and on behalf of the heirs of Michael Begaye, Plaintiff and Appellant,**

v.

**BIG D CONSTRUCTION CORP. and Does I through V, Defendants and Appellees.**

No. 20060572.

Supreme Court of Utah.

Jan. 25, 2008.

James R. Hasenyager, Peter W. Summerhill, Ogden, for plaintiff.

John R. Lund, Julianne P. Blanch, Salt Lake City, for Big D.

WILKINS, Associate Chief Justice:

## INTRODUCTION

¶ 1 Marlene Begaye appeals the district court's grant of summary judgment in favor of Big D Construction Company ("Big D"). We conclude that Big D does not fall within the purview of the retained control doctrine because it did not exercise sufficient control over the method and manner of the injury-causing aspect of the work that caused Michael Begaye's death. Accordingly, we affirm.

## BACKGROUND

¶ 2 In 2003, Big D was hired as the general contractor on a large construction project (the "project") at the University of Utah. In addition to managing the sequencing and work flow of the project, Big D also contracted to be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the project. Big D subsequently hired Preferred Steel, Inc. ("Preferred") as the concrete and masonry subcontractor. Under the terms of the subcontract agreement between Big D and Preferred, Preferred was responsible for its own employees, including providing them with the tools and equipment necessary for the job. Additionally, the subcontract agreement required Preferred to provide a safe workplace for its employees.[1]

¶ 3 In early 2004, Kevin Burns, a Big D superintendent, directed Preferred to begin building the inside face of a rebar wall known as Wall 39. Typically, the project's walls were erected using one of two different methods. One method involved a process whereby Big D placed a concrete form that provided a stable platform to which Preferred could tie steel rebar reinforcements as Wall 39 progressed. A second method involved a process whereby Preferred tied the steel rebar to an adjacent wall, which had already been poured and cured. As Preferred erected Wall 39, it supported it by a third method: using bracing only, without any concrete forms or wires in place. During the construction, the bracing broke loose, causing Wall 39 to collapse. Michael Begaye, a Preferred employee, was thrown to the ground and killed.

¶ 4 Following the accident, Marlene Begaye, the deceased's wife, filed a wrongful death lawsuit against Big D. Big D moved for summary judgment on the basis that it did not have control over the manner and method of the work that caused Michael Begaye's death, and, therefore, it could not be liable. Begaye opposed the motion and filed her own

---

1. Preferred's subcontract agreement states as follows:

At all times while any of your employees, agents, or subcontractors are on the Owner's premises, you are solely responsible for provid-ing them with a safe work place of employment, and you shall inspect all areas where they may work and shall promptly take action to correct conditions which are or may become unsafe.

motion for partial summary judgment on the basis that Big D owed Michael Begaye a duty of safety as a matter of law. After oral argument, the district court granted summary judgment in favor of Big D. The district court reasoned that because Big D had not specifically directed Preferred as to how to build Wall 39—including whether to use bracing in lieu of a form—it did not control the method of the injury-causing activity and was, therefore, not liable under the retained control doctrine. Begaye now appeals that decision.

## ANALYSIS

¶ 5 Begaye raises one main issue on appeal. Begaye avers that the district court erred in granting summary judgment and concluding that Big D did not exercise sufficient control over the method and manner of Preferred's work to have created a limited duty under the retained control doctrine.[2] "Summary judgment is appropriate only upon a showing 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 21, 54 P.3d 1054 (quoting Utah R. Civ. P. 56(c)). The question of whether a trial court properly granted summary judgment is a question of law, which we review for correctness. *See id.* Furthermore, when reviewing a grant of summary judgment, we recite the disputed facts in a light most favorable to the nonmoving party. *See Quaid v. U.S. Healthcare, Inc.*, 2007 UT 27, ¶ 8, 158 P.3d 525.

¶ 6 Begaye contends that Big D is liable under the retained control doctrine because it controlled the workflow, timing, and sequencing of the construction of Wall 39. Furthermore, Begaye argues that because

Big D directed Preferred to work on Wall 39 when there were other walls it could have built that did not require bracing, Big D controlled the method and manner in which Wall 39 was constructed, bringing it within the exception to the general rule that primary employers are not liable for injuries sustained by independent contractors.

¶ 7 Big D, on the other hand, contends that summary judgment was properly granted because there was no evidence that it retained control over the specific method of bracing Wall 39 prior to its collapse. Despite Big D's control over the workplace generally, Big D asserts that it is not liable because it did not instruct Preferred "how to brace, where to tie off the rebar, whether to anchor the wall with guy wiring, or what equipment to use as they were putting up the wall." Accordingly, Big D insists, the retained control doctrine does not apply. We agree.

¶ 8 In the context of tort liability, the general rule is that "'the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.'" *Thompson v. Jess*, 1999 UT 22, ¶ 13, 979 P.2d 322 (quoting Restatement (Second) of Torts § 409 (1965)). An exception to this general rule arises, however, when an employer "participate[s] in or control[s] the manner in which the contractor's work is performed," and therefore "owes [a] duty of care concerning the safety of the manner or method of performance implemented." *Id.* This exception is known as the "retained control doctrine" and provides a *"narrow* theory of liability applicable in the *unique circumstance* where an employer of an independent contractor exercises enough control over the contracted work to give rise to a limited duty of care." *Id.* ¶ 15 (emphasis added).

---

2. Begaye also argues that Big D had a contractual duty to provide a safe work environment and is therefore liable—as a matter of law—for injuries sustained by a subcontractor. Although Big D had a general supervisory role over the project, including a contractual obligation to oversee employee safety, this simply does not equate to exerting control over the method and manner of the injury-causing aspect of Preferred's work. *See Martens v. MCL Constr. Corp.*, 347 Ill.App.3d 303, 282 Ill.Dec. 856, 807 N.E.2d 480, 490 (2004) ("We do not ... equate those [general]

safety responsibilities with control over the *means and methods* of [the subcontractor's] ... work ...." (emphasis added)). Furthermore, Big D's contractual agreement is superseded by the fact that Preferred subsequently contracted to be responsible for the safety of its own employees. "[E]ven if Defendant did have responsibility for safety vis-a-vis the owner, that responsibility was passed on to the various subcontractors [by contract]." *Martinez v. Jacobsen Constr. Co.*, 2005 UT App 136U para. 7, 2005 WL 615106, *2.

¶ 9 *Thompson* is the controlling case in this appeal. In that case, we concluded that a premises owner who asked a contractor to erect a steel pipe was not liable for a worker's injuries because the owner had not instructed the contractor as to the specifics of how to install the pipe. Formally adopting an "active participation" standard, we held that "a principal employer is not subject to liability for injuries arising out of its contractor's work unless the employer 'actively participates' in the performance of the work." *Id.* ¶ 18. Applying this standard, we determined that

> a principal employer is subject to liability for injuries arising out of its independent contractor's work if the employer is actively involved in, or asserts control over, the manner of performance of the contracted work.... Such an assertion of control occurs ... when the principal employer *directs that the contracted work be done by use of a certain mode* or *otherwise interferes* with the means and methods by which the work is to be accomplished.

*Id.* ¶ 19 (emphasis added).

■ ¶ 10 Furthermore, we noted that the requisite degree of control over the contractor's work entails affirmatively interfering with the subcontractor's method of performance or instructing that a less safe method be used. *See id.* ¶¶ 22, 23 (citing *Lewis v. N.J. Riebe Enters.*, 170 Ariz. 384, 825 P.2d 5 (1992)). Simply stated, the general contractor must exercise "such control over the means utilized that the contractor cannot carry out the injury-causing aspect of the work in his or her own way." *Id.* ¶ 21; *see also Dayton v. Free*, 46 Utah 277, 148 P. 408, 411 (1914) (stating that employers are liable when "the *will and discretion* of the contractor as to the *time and manner of doing the work* or the means and methods of accomplishing the results [are] *subordinate* and subject to that of the [general contractor]" (emphasis added)).

■ ¶ 11 We conclude that Big D simply did not exercise sufficient control over the method and manner of the construction of Wall 39 to bring it within the purview of the retained control doctrine. Under *Dayton* and *Thompson*, Big D must have

> exercised the right to ... control the work, not only with respect to the results, but also with reference to methods of procedure or means by which the result was to be accomplished, where the will and discretion of [Preferred] as to the ... methods of accomplishing the results were subordinate to that of [Big D].

*Dayton*, 148 P. at 411; *see also Thompson*, 1999 UT 22, ¶ 18 ("We believe the [retained control doctrine in *Dayton*] is correct, and we formally adopt the same."). In this case, Big D controlled the sequencing of the task, as well as the workflow generally, but it had no discretion or control regarding the specifics of how Wall 39 was built or which bracing method was to be used. In fact, Preferred employees testified that they exclusively controlled the way in which Wall 39 was constructed.[3] Accordingly, although Big D had a general supervisory role[4] over when and where Preferred worked, it did not exercise control such that Preferred could not "carry out the injury-causing aspect of the work" in its own way, nor was Preferred's discretion

---

3. The following deposition testimony was given by Preferred employee Todd Jex:

> Q: [T]his decision ... to go forward with [Wall 39] under the circumstances without forms in place ... and by using the braces only, who made that judgment?
> ...
> A: I would say probably myself and then talking to everybody.
> ...
> Q: Is that a decision that you depended on in any way for Big D to make for you[?]
> A: No. That's what I decided we would do.
> Q: If you had felt that you did not want to go forward ... without first having the forms in place, could you have made that choice?
> ...
> A: Yes.

4. We note that there are serious public policy concerns in holding a general contractor liable for injuries of a subcontractor simply because it has a supervisory role and has closely monitored safety on the job site as a responsible general contractor should. "Penalizing a general contractor's efforts to promote safety and coordinate a general safety program among various independent contractors at a large jobsite hardly serves to advance the goal of work site safety." *Martens v. MCL Constr. Corp.*, 347 Ill.App.3d 303, 282 Ill.Dec. 856, 807 N.E.2d 480, 490 (2004).

subordinate to Big D's. *Thompson,* 1999 UT 22, ¶ 21.

¶ 12 Finally, although Big D "ordered" Preferred to build Wall 39 when it could have sent the employees home for the day or sent them to work on another wall, such direction is insufficient to bring it within the scope of the "active participation" standard articulated by this court. " 'It is not enough that [Big D] ha[d] merely a general right to order the work stopped or resumed. . . . Such a general right is usually reserved to employers, *but it does not mean that [Preferred was] controlled as to [its] methods of work, or as to operative detail.'* " *Id.* ¶ 20 (quoting Restatement (Second) of Torts § 414 cmt. c (1965) (emphasis in original)).

¶ 13 Big D did not control the method by which Wall 39 was braced prior to construction, nor did it affirmatively interfere with Preferred's work. Moreover, it did not insist that a certain method be used to construct Wall 39. As such, Big D does not fall within the narrow contours of the retained control doctrine.

### CONCLUSION

¶ 14 We conclude that Big D did not actively participate in or control the specific method by which Wall 39 was built; therefore, it is not liable under the retained control doctrine. Accordingly, we affirm the district court's grant of summary judgment in favor of Big D.

¶ 15 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.