IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Jose M. Gonzalez, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100671-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (May 24, 2012) |
| Russell Sorensen Construction, | ) | |
| | ) | 2012 UT App 154 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 080921130
The Honorable Joseph C. Fratto Jr.

Attorneys:     Barbara K. Berrett and Mark D. Taylor, Salt Lake City, for Appellant
William J. Hansen, Karra J. Porter, and Tyler V. Snow, Salt Lake City,
for Appellee

-----

Before Judges McHugh, Voros, and Christiansen.

VOROS, Associate Presiding Judge:

¶1     This is an appeal from the denial of a summary judgment motion.  The case involves a workplace injury claim brought by a subcontractor's employee against the general contractor.  The appeal focuses on a general contractor's potential liability for injuries allegedly resulting from a hazardous condition on the job site.

¶2     The general contractor is Appellant Russell Sorensen Construction (Sorensen); the subcontractor is John Clayton Construction (Clayton); the injured employee is Appellee Jose M. Gonzalez (Gonzalez).  After falling from some scaffolding, Gonzalez

sued Sorensen and others. Sorensen moved for summary judgment and the trial court denied the motion. We granted leave to appeal this interlocutory order and now affirm.

BACKGROUND[1]

¶3 Sorensen was the general contractor for a Planned Unit Development (PUD) known as Orchard Vista (the Project) in Midvale, Utah. Sorensen hired Clayton to install siding, soffit, and fascia.[2] Clayton employed Gonzalez. While Gonzalez was standing on some scaffolding, a piece of aluminum J-molding he was holding came into contact with high-voltage power lines. The power lines hung within ten feet of the roof of the building, and thirty-seven inches from the scaffolding. Gonzalez fell eighteen feet, sustaining injuries.

¶4 Gonzalez sued several parties, including Sorensen. In his amended complaint, he alleged generally that the defendants breached their duty of care by failing to "give [Gonzalez] any warning of the dangerous power lines and their close proximity to the site where [Gonzalez's] work was to be performed"; failing to "affirmatively or constructively notify him that it was unsafe to work on the scaffolding"; failing to "have the power turned off or protective barriers installed around the power lines prior to allowing persons to work in close proximity to the power lines"; "[f]ailing to properly exercise and maintain a place of employment which was free from recognized hazards that were likely to cause death or serious physical harm to individuals working at the [p]roperty"; "[f]ailing to enforce safety regulations on the Project"; and "[f]ailing to ensure that the development of the [Project] did not encroach upon the electrical lines

---

[1]In reviewing a trial court's grant or denial of summary judgment, we "view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 10, 235 P.3d 730 (citation and internal quotation marks omitted).

[2]Soffit is the underside of a part or member of a building (as of an overhang or staircase); *especially* the intrados of an arch. Merriam-Webster.com, http://merriam-webster.com/dictionary/soffit (last visited May 17, 2011). Fascia is "a horizontal piece (as a board) covering the joint between the top of a wall and the projecting eaves—called also *fascia board*." Merriam-Webster.com, http://merriam-webster.com/dictionary/fascia (last visited May 17, 2011).

lining the [p]roperty, or that proper safety measures regarding power lines were followed."

¶5    After the close of discovery, Sorensen moved for summary judgment. Sorensen contended that, as a general contractor, it could not be liable for a workplace injury suffered by Clayton's employee unless Sorensen had exercised direct control over the injury-causing aspect of the work. Furthermore, Sorensen contended, the amended complaint failed to give notice of a premises liability claim or allege that Sorensen owned or possessed the property where the injury occurred.

¶6    The trial court denied Sorensen's motion. The court concluded that "when an owner relinquishes control of property to a general contractor, that contractor must be responsible for any conditions it creates on the property, specifically, in this matter, the constructing of a building and its resulting conditions." The court expressly approved and applied section 384 of the Restatement (Second) of Torts. The court ruled that "disputed issues of material fact with respect to whether [Sorensen] created a dangerous condition on the premises and further, whether [Sorensen] took reasonable steps to protect invitees, preclude[] summary judgment."

ISSUES AND STANDARD OF REVIEW

¶7    Sorensen asserts two challenges to the trial court's order denying summary judgment. First, Sorensen contends that Gonzalez's amended complaint failed to sufficiently plead the theory of premises liability, barring him from raising that theory in his memorandum in opposition to summary judgment. Second, Sorensen contends that the trial court erroneously relied on section 384 of the Restatement (Second) of Torts to conclude that Sorensen owed a duty of care to Gonzalez as an employee of an independent contractor.

¶8    "Summary judgment is appropriate only upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343 (citation and internal quotation marks omitted); *see also* Utah R. Civ. P. 56(c). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness." *Bingham v. Roosevelt City Corp.*, 2010 UT 37 ¶ 10, 235 P.3d 730 (citation and internal quotation marks omitted).

ANALYSIS

## I.  Gonzalez's Amended Complaint Gave Adequate Notice of His Claim.

¶9      Sorensen challenges the trial court's denial of summary judgment on the ground that Gonzalez's amended complaint failed to give notice of his premises liability claim. A claim of relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Utah R. Civ. P. 8(a).[3]  The Utah Supreme Court has "consistently noted that Utah's notice pleading requirements are liberal."  *Gudmundson v. Del Ozone,* 2010 UT 33, ¶ 40, 232 P.3d 1059.  "[A]ll that is required is that the pleadings be sufficient to give fair notice of the nature and basis of the claim asserted and a general indication of the type of litigation involved."  *Id.* (internal quotation marks omitted).  The issue, then, is whether Gonzalez's amended complaint gave "fair notice of the nature and basis of the claim" and "a general indication of the type of litigation involved."  *See id.* ¶ 40 (citation and internal quotation marks omitted).

¶10     Sorensen contends that Gonzalez's amended complaint was deficient under rule 8 for two reasons.[4]  First, it argues that Gonzalez's premises liability claim was not

---

[3]Rule 8 of the Utah Rules of Civil Procedure has since been amended, but the amendment is effective only as to cases filed on or after November 1, 2011, and thus does not apply to the present case.

[4]In its reply brief, Sorensen also argues a third reason that the amended complaint was deficient:  it utilized a "'shotgun' pleading format that lump[ed] all of the defendants together in each cause of action and provide[d] no factual basis to distinguish their conduct."  This, according to Sorensen, made it "nearly impossible . . . to accurately discern the factual underpinning of each claim."  Because Sorensen did not raise this argument in its opening brief, we do not address it.  *See Allen v. Friel,* 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not preserved in the opening brief are considered waived and will not be considered by the appellate court." (citation and internal quotation marks omitted)).  We note, however, that "when a complaint states a claim in general language but the factual allegations are so vague and ambiguous that the defendant cannot draft an answer, the proper course of action is to move for a more definite statement under rule 12(e)."  *Whipple v. American Fork Irrigation Co.,* 910 P.2d 1218, 1222 n.3 (Utah 1996); *see*

(continued...)

pleaded in the amended complaint, but raised for the first time in his memorandum opposing summary judgment. Because the premises liability argument was not pleaded, Sorensen argues, the trial court should not have considered it. Second, Gonzalez "fail[ed] to allege that [Sorensen] owned or possessed the property at issue," an allegation that, according to Sorensen, was required to state a premises liability claim.

¶11    First, we do not agree that Gonzalez's amended complaint does not plead a premises liability claim. Sorensen relies on *Gudmundson v. Del Ozone,* 2010 UT 33, 232 P.3d 1059. *Gudmundson* involved a products liability claim in which the plaintiff, a state prison employee who supervised a laundry facility, alleged that a defective ozone generator caused her injuries from ozone overexposure. *See id.* ¶¶ 3-5. The complaint asserted several claims based on the theory that ozone overexposure had caused the plaintiff's injuries. *See id.* ¶¶ 6, 41. As the court explained, "[n]ot until her memorandum in opposition to summary judgment did she argue that ozone *combined with other chemicals* present in the laundry facility caused . . . her to develop symptoms indicative of chemical toxicity." *Id.* ¶ 41 (emphasis added). This argument amounted to a new theory of causation that "depend[ed] on different factual theories and present[ed] different types of legal liability." *Id.* The plaintiff's original claim—that ozone overexposure had caused her injuries—would be a strict liability claim if the ozone generator was found to be defective, while her subsequent theory of causation—that "the presence of ozone combined with other chemicals ordinarily present in a laundry facility" caused her injuries—"sounds in negligence." *Id.*

¶12    Here, Gonzalez's memorandum in opposition to summary judgment did not assert a different type of legal liability than that asserted in his amended complaint. In his amended complaint, Gonzalez asserted that the defendants (including Sorensen) breached their duty of care by failing to maintain a workplace free from hazards, failing

---

⁴(...continued)
*also* Utah R. Civ. P. 12(e) ("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.").

to ensure that the building did not encroach upon the electrical power lines, failing to enforce safety measures such as insulating or cutting off power to the electrical lines, failing to warn Gonzalez of the power lines and their proximity to his work site, and allowing workers to work less than ten feet from the power lines. In his memorandum in opposition to summary judgment, Gonzalez asserted that Sorensen committed "direct, independent acts of negligence." These included constructing the building too close to the power lines and then failing to take reasonable steps to rectify the hazardous condition, such as relocating the power lines, insulating or "de-energizing" them while workers were present, or warning subcontractors of the danger they posed. While these two descriptions of the alleged negligent acts are not identical, we do not agree that the allegations in the memorandum so depart from the pleaded claim as to deny Sorensen "fair notice of the nature and basis of the claim" and "a general indication of the type of litigation involved." *See Gudmundson,* 2010 UT 33, ¶ 40 (citation and internal quotation marks omitted).

¶13     Second, Sorensen argues that the amended complaint "fails to allege that [Sorensen] owned or possessed the property at issue." That failure, argues Sorensen, was fatal to a premises liability claim. Gonzalez acknowledges that the complaint did not allege that Sorensen owned the property. Indeed, Gonzalez states, "such an allegation would have been incorrect." Rather, Gonzalez's argument is that Sorensen's duty as general contractor was *analogous to* the duty owed by an owner or possessor as described in section 384 of the Restatement of Torts. *See* Restatement (Second) of Torts § 384 & cmt. h (1965).

¶14     Sorensen responds that Gonzalez's "novel premises liability claim [based on section 384] is predicated upon the adoption of Restatement [section] 384, which has never been adopted by a Utah appellate court" and conflicts with established Utah law governing a general contractor's liability. Therefore, Sorensen claims, to have notice that Gonzalez's claims were based in premises liability, Sorensen "would have had to assume that its role as general contractor placed it in the same position as a property owner even though Utah law has never recognized that a general contractor ipso facto assumed the same liabilities as a landowner." The success of this argument thus depends on whether section 384 describes Utah law. Because we hold that section 384 accurately describes Utah law, Gonzalez need not have alleged ownership or possession of the property.

20100671-CA                                    6

## II.  Restatement Section 384 States Utah Law.

¶15     Sorensen contends that the trial court erred when it ruled that Sorensen could be liable for Gonzalez's injuries based on principles summarized in section 384 of the Restatement (Second) of Torts.  Sorensen asserts that section 384 has not been adopted by any Utah appellate court and conflicts with established Utah law.  According to Sorensen, the trial court should have read the amended complaint as a claim for vicarious liability under the retained control doctrine and concluded that Gonzalez failed to allege facts to support such a claim.  Therefore, Sorensen argues, the trial court should have found no disputed issues of material fact relevant to Sorensen's liability.  On the other hand, Gonzalez disavows any vicarious liability claim and maintains that the retained control doctrine has no application to this case.  He claims that he has adequately framed a direct liability claim against Sorensen as a general contractor.  We agree with Gonzalez.

¶16     The general rule in Utah for vicarious liability is that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."  *Thompson v. Jess*, 1999 UT 22, ¶ 13, 979 P.2d 322 (quoting Restatement (Second) of Torts § 409).[5]  The retained control doctrine represents an exception to this general rule of non-liability.  "Despite the general non-liability rule, the employer of a contractor remains liable for the contractor's actions when the employer participate[s] in or control[s] the manner in which the contractor's work is performed, and therefore owes [a] duty of care concerning the safety of the manner or method of performance implemented."  *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 23, 215 P.3d 143 (alterations in original) (internal quotation marks omitted).  The doctrine of retained control is "applied narrowly in *unique circumstance*[*s*] where an employer of an independent contractor exercises enough control over the contracted work to give rise to a limited duty of care."  *Id.* (alterations in original) (internal quotation marks omitted).

---

[5]"For the purposes of the general non-liability rule, the terms 'employer' and 'independent contractor' are used generally.  For example, the term 'employer' . . . could . . . mean a contractor who hires a subcontractor to complete a specific part of the construction, in which case the subcontractor would be the 'independent contractor.'"  *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 21 n.4, 215 P.3d 143.  In the instant case, the "employer" is Sorensen (the general) and the "contractor" is Clayton (the sub).

¶17    Sufficient control exists when the employer of the independent contractor "'exert[s] such control over the means utilized that the contractor cannot carry out the injury-causing aspect of the work in his or her own way.'"  *Id.* ¶ 31 (quoting *Thompson,* 1999 UT 22, ¶ 21).  "[A] general obligation to oversee safety on a project does not equate to exerting control over the method and manner of the injury-causing aspect of [the subcontractor's] work . . . even where the general contractor has closely monitored on-site safety."  *Id.* ¶ 29 (second alteration in original) (citation and internal quotation marks omitted).  This principle is consistent with the general rule of non-liability in common law.  *See id.* ¶ 22–23.

¶18    The Utah Supreme Court made clear in *Magana v. Dave Roth Constr.,* 2009 UT 45, 215 P.3d 143, that the general rule of non-liability applies to claims of *vicarious* liability—not to claims of direct negligence on the part of the employer.  *See id.* ¶ 22.  According to the supreme court, "the common law general non-liability rule only recognizes that employers are not liable for the actions of their contractors.  The rule does not speak to an employer's liability for its own actions."  *Id.* ¶ 37.  Thus, the retained control doctrine does not immunize a contractor from its own negligent acts.  *See id.* ¶¶ 36–38.

¶19    Here, Gonzalez disavows any vicarious liability claim, asserting rather that Sorensen is directly liable for its own negligence.  Gonzalez alleges that Sorensen created conditions that caused Gonzalez's injuries by, for example, "failing to ensure that the development of the [p]roperty did not encroach upon the electrical lines lining the [p]roperty," by failing to warn Gonzalez of the close proximity of dangerous power lines to the place where Gonzalez would perform his work, and by failing to "have the power turned off or protective barriers installed around the power lines."  These claims are distinct from a vicarious liability claim, and should be "separately consider[ed] . . . under the direct negligence theory" that Gonzalez has advanced.  *See id.* ¶¶ 36–37.

¶20    "To establish a claim of negligence, the plaintiff must establish four essential elements:  (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages."  *Webb v. University of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 (citation and internal quotation marks omitted).  Sorensen's argument centers on the element of duty; Sorensen essentially argues that it owed no duty of care to Gonzalez under the circumstances of this case.  "[W]ithout a

duty, there can be no negligence as a matter of law and summary judgment is appropriate." *Tallman v. City of Hurricane*, 1999 UT 55, ¶ 5, 985 P.2d 892. However, if Sorensen owed Gonzalez "a duty under any [pleaded] legal theory, and there are disputed facts as to whether that duty was breached," then we must affirm the trial court's denial of Sorensen's summary judgment. *See id.*

¶21 Gonzalez contends that Sorensen's duty is described in section 384 of the Restatement. Section 384 is one of a pair of restatement sections addressing the liability of "persons creating artificial conditions on land on behalf of possessor[s]." *See* Restatement (Second) of Torts § 384 (1965) (capitalization omitted). Section 384 addresses the liability of these persons for physical harm "caused while work remains in their charge":

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.

*Id.* "[A] landowner has a duty to protect his invitees from obviously harmful conditions or activities on the property if the landowner should anticipate the harm despite the obvious nature of the danger." *Hale v. Beckstead*, 2005 UT 24, ¶ 25, 116 P.3d 263 (quoting Restatement (Second) of Torts § 343A(1) (1965)).

¶22 Like section 384, section 385 addresses the liability of "persons creating artificial conditions on land on behalf of possessor[s]." *See* Restatement (Second) of Torts § 385 (citation omitted). However, section 385 addresses the liability of these persons for physical harm caused "after [their] work has been accepted":

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor,

> under the same rules as those determining the liability of
> one who as manufacturer or independent contractor makes a
> chattel for the use of others.

*Id.*

¶23    Thus, the principal difference between section 384 and section 385 is temporal:
section 384 applies while the work is still in the general contractor's charge, *see id.* § 384;
while section 385 applies "after his work has been accepted," *see id.* § 385.  The nature of
the contractor's liability differs accordingly:  while the work is still in his charge, he is
subject to liability "as though he were the possessor of the land," *Id.* § 384; after his
work has been accepted, he is subject to liability as one who "makes a chattel for the use
of others," *id.* § 385.  This difference is based in part on the fact that "[w]hen the work is
completed and accepted by the possessor, the . . . contractor's connection with the land
ceases." *Id.* § 385, cmt. d.  But in either case, the contractor is directly liable for physical
harm caused by conditions that he created on the land.

¶24    Sorensen correctly asserts that no Utah court has adopted section 384.  However,
the Utah Supreme Court did adopt section 385 in *Tallman v. City of Hurricane,* 1999 UT
55, 985 P.2d 892.  In *Tallman*, a city hired a general contractor to install water lines.  *Id.*
¶ 2.  The general contractor hired a subcontractor to dig the necessary trenches, but the
general contractor agreed to provide "all trench protection and shoring." *Id.* ¶ 2.  The
subcontractor dug the trench at a depth exceeding both contract specifications and
government standards for unshored trenches.  The subcontractor knew that the general
contractor had not shored the trench, and that the general contractor's employees
would be working in it.  *Id.*  Tallman, an employee of the general contractor, was
working in the trench when a rock fell from the unshored trench, killing him.  *Id.* ¶¶ 2-3.
Tallman's heirs sued several defendants, including the subcontractor.  *Id.* ¶ 4.  The trial
court granted summary judgment in favor of the subcontractor; the supreme court
reversed.  *Id.* ¶ 24.

¶25    Citing section 385, the supreme court "announce[d] unambiguously that Utah
follows the foreseeability rule set forth in the Restatement (Second) of Torts and
followed by a majority of states." *Id.* ¶ 8.  Then, citing and quoting section 385, the
court declared, "The creator of an artificial condition on land may be liable to
others—both upon or outside of the land—for physical harm caused by its dangerous

nature." *Id.* ¶ 9. The court continued, "The subsequent acceptance by the possessor of the completed condition does not abrogate this duty." *Id.* In other words, the court held that the creator of an artificial condition on land is subject to liability as articulated in the Restatement (Second) of Torts. *See id.*

¶26 The court in *Tallman* did not cite section 384 or state that it accurately summarizes Utah law. However, the court's reasoning makes that conclusion inescapable. If, as *Tallman* holds, a contractor is liable "'after his work has been accepted by the possessor,'" for harm caused by a condition he created on the land, *see Tallman,* 1999 UT 55, ¶ 9 (quoting Restatement (Second) of Torts § 385), it logically follows that such a contractor would also be liable for such harm "while the work is in his charge," *see* Restatement (Second) of Torts § 384. Indeed, the court's statement that the landowner's acceptance of a hazardous condition does not "abrogate [the] duty" owed by the condition's creator (the section 385 situation), *see id.* ¶ 9, presupposes the existence of such a duty while the work is still in his charge (the section 384 situation). We thus conclude that section 384 of the Restatement (Second) of Torts correctly states Utah law.

¶27 We do not see this conclusion as an expansion of contractor liability, as Sorensen suggests. We are supported in this view by the Tenth Circuit Court of Appeals. That court, on facts similar to those alleged by Gonzalez here, concluded over forty years ago that the rule of section 384 is the law of Utah:

> As applied to a general contractor in control of a structure or premises upon which work is being done, the rule is that such contractor is liable to an employee of another contractor rightfully using any portion of the premises for negligence in failing to keep it in a safe condition and to give warning of latent or concealed perils.

*Titan Steel Corp. v. Walton,* 365 F.2d 542, 546 (10th Cir. 1966) (applying Utah law). We agree with the Tenth Circuit's observation that "[t]his rule is not inconsistent nor incompatible with the general rule of non-liability of a general contractor for torts of an independent contractor." *Id.; see also Magana v. Dave Roth Constr.,* 2009 UT 45, ¶ 38, 215 P.3d 143 (holding that a general contractor "remains liable for its own direct actions"). Finally, this result is in step with a significant number of jurisdictions that have adopted

section 384 or have similarly applied principles of premises liability to independent contractors. *See, e.g., Smithey v. Stueve Constr. Co.*, No. 04-4067 KES, 2007 WL 172511, at *4 (D.S.D. Jan. 18, 2007) (listing jurisdictions that have adopted section 384).[6]

¶28    Gonzalez contends that Sorensen owed a duty of care with respect to the premises where Gonzalez was injured. In violation of this duty, Gonzalez alleges, Sorensen constructed or oversaw the construction of the building too close to energized power lines, or knew of the building's dangerous proximity to them, and could have foreseen harm to Gonzalez and other subcontractors and employees. Therefore, Gonzalez alleges, Sorensen had a duty akin to that of a landowner to remedy this dangerous condition, or at least to warn Gonzalez of the danger, under the principles articulated in section 384 and *Hale v. Beckstead*, 2005 UT 24, ¶ 25, 116 P.3d 263 ("a landowner has a duty to protect his invitees from obviously harmful conditions or activities on the property if the landowner should anticipate the harm despite the obvious nature of the danger.") *Id.* (citation and internal quotation marks omitted). We see nothing in this reasoning that contradicts the general rule of non-liability applicable to vicarious liability claims.

¶29    "Summary judgment is appropriate only upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343. The trial court correctly found disputed issues here. These include whether Sorensen created a dangerous condition on the premises and whether Sorensen took reasonable steps to protect invitees from any dangerous conditions it had created. In light of Gonzalez's direct negligence claims, these disputed factual issues preclude summary judgment.

¶30    We hold that section 384 correctly states Utah law governing the liability of general contractors for harm caused to others by conditions at a job site. Gonzalez alleged material facts to support a claim of direct negligence based on principles

---

[6]At least twenty other jurisdictions have followed the principles articulated in section 384. *See Smithey v. Stueve Constr. Co.,* No. 04-4067 KES, 2007 WL 172511, at *4 (D.S.D. Jan. 18, 2007). *See, e.g., Yee Chuck v. Board of Trustees of Leland Stanford Jr. Univ.,* 3 Cal. Rptr. 825, 830 (Cal. Ct. App. 1960); *Duggan v. Esposito,* 422 A.2d 287, 289 (Conn. 1979); *Tipton v. Texaco, Inc.*, 712 P.2d 1351, 1358 (N.M. 1985); *Leonard v. Commonwealth,* 771 A.2d 1238, 1240–41 (Pa. 2001).

articulated in section 384. At least some of those facts are in dispute. Therefore, the trial court was correct to deny Sorensen's motion for summary judgment.


CONCLUSION

¶31    Under Utah's liberal notice pleading rules, Gonzalez's amended complaint alleged facts that could support a finding of premises liability against Sorensen. Thus, the trial court did not abuse its discretion in rejecting Sorensen's argument that Gonzalez raised this claim for the first time in his memorandum opposing summary judgment. In addition, supreme court precedent compels the conclusion that the Restatement (Second) of Torts section 384 accurately states Utah law with respect to direct liability of persons who create structures or other artificial conditions on land. Because genuine issues of material fact remain, the trial court properly denied Sorensen's motion for summary judgment.

¶32    Affirmed.


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


-----


¶33    WE CONCUR:


_____
Carolyn B. McHugh,
Presiding Judge


_____
Michele M. Christiansen, Judge