**2013 UT App 240**

# THE UTAH COURT OF APPEALS

MICHAEL CROMWELL,
Plaintiff and Appellant,

*v.*

A & S CONSTRUCTION, INC. AND *GUNS AND HOSES, INC.*,
Defendants and *Appellee*.

Opinion
No. 20110385-CA
Filed October 10, 2013

Fifth District, St. George Department
The Honorable G. Rand Beacham
No. 080501893

Elizabeth B. Grimshaw and Aaron J. Prisbrey,
Attorneys for Appellant
John H. Romney, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in which JUDGE WILLIAM A. THORNE JR. concurred.[1] JUDGE CAROLYN B. MCHUGH concurred in the result.

CHRISTIANSEN, Judge:

¶1      Plaintiff Michael Cromwell challenges the district court's grant of summary judgment to defendant Guns and Hoses, Inc. (Guns & Hoses) on Cromwell's negligence claim. We affirm.

---

1. Judge William A. Thorne Jr. participated in and voted on this case as a regular member of the Utah Court of Appeals. He retired from the court before this decision issued.

BACKGROUND

¶2    In 2006, property owners in Cedar City contracted with A & S Construction, Inc. (A&S) to build a new residence.[2] A&S served as the general contractor on the project and supervised all aspects of construction, including the construction of an elevator shaft inside the residence between the basement and the top floor of the home. Before the elevator was installed, A&S subcontracted with Guns & Hoses to perform finish carpentry work on the home, including installation of doors at the access to the empty elevator shaft on the upper levels of the residence. Miguel Ramirez, the owner of Guns & Hoses, installed these doors. Three weeks after Ramirez installed the doors, Cromwell, an employee of Reber Painting, was applying putty to the trim of the doors on the second floor of the residence. When he opened the door at the elevator shaft to apply putty to the inside, he fell approximately thirty-six feet down the empty elevator shaft and was seriously injured.

¶3    Cromwell filed a negligence action against A&S. A&S filed a Notice of Allocation of Fault to Guns & Hoses, and the parties stipulated to Cromwell amending his complaint to add Guns & Hoses as a defendant.[3] Cromwell added a cause of action for negligence against Guns & Hoses, alleging that

> Guns & Hoses owed a duty of care to install doors, secure them and warn of known dangers, such as the open elevator shaft, in a reasonable fashion and in accordance with existing safety standards as it relates

---

2. "[W]hen reviewing a grant of summary judgment, we recite the disputed facts in a light most favorable to the nonmoving party," in this case, Cromwell. *See Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343.

3. This appeal is interlocutory because it relates only to Cromwell's claims against Guns & Hoses.

> to the 2[nd] floor hinged door which opened onto the
> empty elevator shaft.
> . . . .
> . . . Guns & Hoses breached its duty to Mr. Cromwell
> by failing to comply with OSHA standards and
> otherwise take reasonable precautions to warn and
> protect others on the premises of the danger posed
> by the hinged door to an open elevator shaft.

¶4    Guns & Hoses moved for summary judgment, arguing that it owed no legal duty to Cromwell because its duty was limited to installing doors leading to the empty elevator shaft and "did not extend to supervision or safety issues." Guns & Hoses alternatively argued that even if it had a duty to protect others from the risk presented by the covered elevator shaft, it did not breach that duty because it adequately secured the doors and warned of the danger of the empty elevator shaft.

¶5    In opposition to Guns & Hoses' motion for summary judgment, Cromwell argued that subcontractors "owe a duty of care for the work they do on a construction project." Cromwell also argued that disputed material facts existed regarding the timing and manner in which the doors were secured and whether they were secured at all.

¶6    The district court granted Guns & Hoses' motion for summary judgment, relying on the following facts that it viewed as undisputed: (1) "[Cromwell] alleges that Guns & Hoses owed a duty to secure the elevator shaft doors and warn of the danger of the elevator shaft," (2) "Guns & Hoses secured the elevator shaft doors after installing them," (3) "A&S confirmed that the elevator shaft doors were secured by Guns & Hoses after they were installed and before [Cromwell's] fall," (4) "[the homeowners] also confirmed that the elevator shaft doors were secured by Guns & Hoses after they were installed and before [Cromwell's] fall."

¶7    Based on these undisputed facts, the district court granted summary judgment to Guns & Hoses. The district court's summary judgment ruling was based on its determination that Guns & Hoses

owed no duty to Cromwell to secure the doors, but also on its determination that, even if Guns & Hoses owed Cromwell such a duty, the undisputed facts demonstrated that Guns & Hoses did not breach that duty because it secured the doors and posted warnings. The district court certified the order as a final judgment at the request of the parties, and Cromwell appeals.

ISSUES AND STANDARDS OF REVIEW

¶8    Cromwell argues that summary judgment was inappropriate because disputed issues of material fact existed concerning the reasonableness of Guns & Hoses' installation of the doors. Cromwell also argues that the district court failed to view the facts and reasonable inferences in the light most favorable to him as the nonmoving party. Finally, he argues that the district court erred in determining that Guns & Hoses owed him no duty.

¶9    "Summary judgment is appropriate only upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343 (citation and internal quotation marks omitted). "The question of whether a trial court properly granted summary judgment is a question of law, which we review for correctness." *Id.* Similarly, whether a duty exists is a question of law, and we review the district court's determination on that point for correctness. *Ottens v. McNeil*, 2010 UT App 237, ¶ 23, 239 P.3d 308.

ANALYSIS

I. Guns & Hoses Had No Duty to Protect Cromwell from the Risk of Falling into the Elevator Shaft at the Time of the Injury.

¶10    Cromwell challenges the district court's conclusion that Guns & Hoses owed no duty to Cromwell at the time he arrived on

the job site.[4] Cromwell argues that "Guns & Hoses owed a duty of care to perform the work it was hired to do in a reasonable manner." While Cromwell appears to view the question of duty as a side issue to be "revisit[ed]" if the district court's grant of summary judgment were reversed, "without a duty, there can be no negligence as a matter of law, and summary judgment is appropriate," *see Tallman v. City of Hurricane*, 1999 UT 55, ¶ 5, 985 P.2d 892 (citation and internal quotation marks omitted). Thus, our first inquiry is whether Guns & Hoses owed a duty to Cromwell at the time of his injury.

A.      Guns & Hoses' Duty as a Subcontractor

¶11     "The creator of an artificial condition on land may be liable to others . . . for physical harm caused by its dangerous nature." *Id.* ¶¶ 8–9 (adopting Restatement (Second) of Torts § 385 (1965)). Where a contractor is engaged to perform work without direct supervision and control by the owner, the contractor is responsible for preventing the risk arising out of the work, and administering and distributing it. *See Thompson v. Jess*, 1999 UT 22, ¶ 13, 979 P.2d 322. Thus, so long as the work remains in his control, a contractor "is subject to liability 'as though he were the possessor of the land.'" *See Gonzalez v. Russell Sorensen Constr.*, 2012 UT App 154, ¶ 23, 279 P.3d 422 (quoting Restatement (Second) of Torts § 384 (1965)); *see also id.* ¶ 30 (concluding that section 384 of the Restatement is an accurate statement of Utah law "governing the liability of general contractors for harm caused to others by conditions at a job site"). Where a general contractor hires a subcontractor to perform a part of the work, the subcontractor is

---

4. The district court wrote at some length on whether Guns & Hoses owed a "continuing duty to guard, monitor, maintain and secure the elevator door" after completion of its work. While this analysis by the district court may have, to some extent, misapprehended Cromwell's argument below, the district court ultimately concluded that Guns & Hoses owed no duty to Cromwell at the time of the injury. It is this conclusion that we review.

liable in the same manner but "for only such harm as is done by the particular work entrusted to him." *See* Restatement (Second) of Torts § 384 cmt. d (1965).

¶12     Thus, a general contractor bears the risk of harm caused to others, including employees of a subcontractor, by the dangerous character of the structure being built while the work remains in the general contractor's charge. *See Gonzalez*, 2012 UT App 154, ¶¶ 21, 30 (concluding that a subcontractor's employee had pleaded sufficient facts supporting a direct negligence claim against the general contractor under section 384 of the Restatement to preclude summary judgment). While no Utah case specifically addresses a subcontractor's duties to the employees of another subcontractor, we conclude that under *Thompson v. Jess* and section 384 of the Restatement, a subcontractor owes the same duty to employees of another subcontractor as it owes to any other person. *See Thompson*, 1999 UT 22, ¶ 13; Restatement (Second) of Torts § 384 & cmt. d; *cf. Tallman*, 1999 UT 55, ¶ 30 (holding that a subcontractor may have a duty under section 385 of the Restatement to employees of a general contractor). This conclusion is consistent with how other jurisdictions have addressed claims of negligence between subcontractors. *See, e.g., Sarmiento v. Stubblefield's Custom Concrete, Inc.*, 874 P.2d 997, 999 (Ariz. Ct. App. 1994) (holding that a subcontractor owed a duty to perform its work without creating an unreasonable risk to another subcontractor); *Johnson v. A & M Custom Built Homes of West Bloomfield, LPC*, 683 N.W.2d 229, 232 (Mich. Ct. App. 2004) ("[A]s between two independent contractors who work on the same premises, either at the same time or one following the other, each owes to the employees of the other the same duty of exercising ordinary care as they owe to the public generally." (citation and internal quotation marks omitted)); *Tapia v. Panhandle Steel Erectors Co.*, 428 P.2d 625, 629 (N.M. 1967) ("'Where two or more independent contractors, or a general contractor and one or more subcontractors, are engaged in work on the same premises, it is the duty of each contractor, in prosecuting his work, to use ordinary and reasonable care not to cause injuries to the servants of another contractor . . . .'" (quoting 57 C.J.S. *Master & Servant* § 610)).

¶13    However, a subcontractor's liability to employees of another subcontractor is limited to "only such harm as is done by the particular work entrusted to him." *See* Restatement (Second) of Torts § 384 cmt. d; *accord Gonzales*, 2012 UT App 154, ¶ 26 ("[S]ection 384 of the Restatement (Second) of Torts correctly states Utah law."). The scope of a subcontractor's duty to employees of other contractors is exemplified by *Weiser v. Bethlehem Steel Corp.*, 508 A.2d 1241 (Pa. Super. Ct. 1986), wherein an employee of one subcontractor on a construction site alleged that he was injured by the negligence of another subcontractor. *Id.* at 1243–44. The general contractor had contracted with Bethlehem Steel to erect the structural steel frame of the building. *Id.* at 1243. Bethlehem Steel was required to maintain temporary planking below its operations in order to protect its own workers from falling and other workers from being harmed by its operations. *Id.* Weiser was employed by a subcontractor hired to weld permanent decking to the structure after Bethlehem Steel removed the temporary planking and relinquished control of each floor. *Id.* Weiser was injured when he slipped and fell down an elevator shaft from the twelfth floor of the structure after Bethlehem Steel had removed the temporary planking on that floor and turned it over to the metal decking subcontractor. *Id.* Weiser claimed that Bethlehem Steel was negligent in removing the planking covering the elevator shaft on the twelfth floor. *Id.* at 1243–44.

¶14    In evaluating Bethlehem Steel's duty to Weiser, the superior court first determined that under section 384 of the Restatement, Bethlehem Steel "had the liability of a possessor of land with respect to harm done by that portion of the work which it had subcontracted to perform, erecting the building's structural steel frame." *Id.* at 1245. Thus, Bethlehem Steel "had the duty to exercise reasonable care to protect Weiser from harm which might be done to him by dangerous conditions in the work Bethlehem Steel had subcontracted to perform." *Id.* at 1246. However, the court determined that Bethlehem Steel's responsibilities included only erecting the building's structural steel and laying temporary planking on the floors immediately below its active operations to prevent injuries from falls by Bethlehem Steel's employees or falling material. *Id.* Because the dangerous condition that caused

Weiser's injuries—the open elevator shaft—was created by the general contractor, and because making the dangerous condition safe on floors where it was not operating was not within the scope of Bethlehem Steel's contractual duties, Bethlehem Steel had no duty to cover the elevator shaft to ensure workers' safety where it was no longer working. *Id.* Rather, because the general contractor had created the dangerous condition of the elevator shaft and Bethlehem Steel had relinquished control of the twelfth floor, the duty to protect against such injuries fell upon the general contractor and the subcontractor in control of the area at the time of the accident. *Id.* at 1246–47.

¶15 We find the *Bethlehem Steel* court's analysis and application of section 384 of the Restatement persuasive here. Guns & Hoses contracted to perform door framing and installation of doors throughout the home, including the installation of doors at the access to the elevator shaft. Guns & Hoses therefore had a duty to exercise reasonable care to protect other workers from dangerous conditions in the work that Guns & Hoses had contracted to perform—installation of doors. *Cf. id.* at 1245. Thus, Guns & Hoses would be liable for injuries caused by deficient installation or other flaws in its own work that rendered that work dangerous to others. However, Guns & Hoses did not create the dangerous condition of the empty elevator shaft, nor did it exercise any control over the condition of the shaft. Cromwell concedes in his complaint that A&S "was solely responsible for maintaining an open empty elevator shaft behind a hinged bedroom door." A&S controlled all work in and around the elevator shaft both before and after Guns & Hoses completed its work and turned it over to A&S. A&S directed Guns & Hoses to install the doors at the access to the empty elevator shaft. While Guns & Hoses had a duty to exercise reasonable care in installing the doors, that duty did not extend to ensuring the safety of other workers around the dangerous condition created by A&S.

B.      Duty of One Who Undertakes to Render Services

¶16     Cromwell also argues that once Guns & Hoses took steps to secure the doors in front of the elevator shaft, "it also owed a duty of care to others on the job site because it affirmatively undertook the duty to protect against and warn of the danger." "Where one undertakes an act which he has no duty to perform and another reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care." *Stuckman ex rel. Nelson v. Salt Lake City*, 919 P.2d 568, 573 (Utah 1996) (citation and internal quotation marks omitted).

¶17     We do not reach the question of whether Guns & Hoses owed a duty on this basis because Cromwell has not properly presented the issue to this court. An appellate brief must contain "citation to the record showing that the issue was preserved in the trial court" or "a statement of grounds for seeking review of an issue not preserved in the trial court." Utah R. App. P. 24(a)(5)(A), (B). Cromwell has not identified where this argument was raised before the district court, and our review of the record does not show that Cromwell "specifically raised" the issue and "introduce[d] supporting evidence or relevant legal authority" to afford the district court an opportunity to rule on the issue. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted). Rather, Cromwell's argument on this claim before the district court consisted of one cursory statement in his memorandum opposing summary judgment and another at oral argument, neither of which were supported with reference to relevant legal authority or supporting evidence addressing the elements of this claim. Moreover, Cromwell has not adequately developed this argument in his briefing to this court. Our rules require "not just bald citation to authority but development of that authority and reasoned analysis based on that authority." *See Torrie v. Weber County*, 2013 UT 48, ¶ 19 (citation and internal quotation marks omitted). Because Cromwell failed to preserve this issue before the district court or adequately brief it for decision by this court, we decline to address it further.

¶18    Cromwell has not demonstrated that Guns & Hoses owed any duty to him to protect him from the risk of falling into the elevator shaft. We therefore conclude that the district court did not err in determining that Guns & Hoses owed no duty to Cromwell at the time of his injury.

## II. Because Guns & Hoses Had No Duty to Protect Cromwell from this Injury, Summary Judgment Was Appropriate.

¶19    Cromwell argues that summary judgment was not appropriate because the district court erred in determining that there were no disputed issues of material fact. Summary judgment is appropriate only when there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. *See Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343 (citation and internal quotation marks omitted). However, the disputed facts identified by Cromwell relate only to whether Guns & Hoses breached any duty it owed to him. Because Cromwell has not demonstrated that Guns & Hoses owed a duty to protect him from the injuries he sustained in the fall, any disputed facts relating to whether Cromwell breached a duty are not material. The district court accordingly did not err in concluding that there was no genuine issue as to any *material* fact that would preclude summary judgment. *See id.* Summary judgment was therefore appropriate because Guns & Hoses was entitled to judgment as a matter of law. *See Tallman v. City of Hurricane*, 1999 UT 55, ¶ 5, 985 P.2d 892.

¶20    Cromwell also argues that the district court failed to view the facts and inferences in the light most favorable to him as the nonmoving party. However, the facts that Cromwell asserts the district court failed to view in his favor all relate to whether Guns & Hoses breached a duty. Absent a showing that prejudice likely resulted from the district court's ruling, "we will not reverse [the] trial court for committing harmless error." *State v. Vargas*, 2001 UT 5, ¶ 48, 20 P.3d 271 (alteration in original) (citation and internal quotation marks omitted). The facts related to breach of a duty are not material, because Cromwell has not demonstrated that Guns & Hoses owed him a duty. Accordingly, any error in the district

court's failure to view those facts and inferences in the light most favorable to Cromwell would be harmless.

CONCLUSION

¶21    Guns & Hoses' duty to exercise reasonable care in hanging doors at the access to an empty elevator shaft did not extend to securing that shaft to prevent harm to other workers on the site. Cromwell has not demonstrated that Guns & Hoses owed to him any other duty that would support his claim of negligence. The district court's grant of summary judgment was therefore correct, and any error in the district court's consideration of the facts was harmless.

¶22    Affirmed.